[Nos. B054032, B054838. Second Dist., Div. Three. Feb. 10, 1994.]

KATHLEEN JOYCE KELLY-ZURIAN, Plaintiff and Appellant, v.
WOHL SHOE COMPANY, INC., et al., Defendants and Appellants.

## COUNSEL

West & Miyamoto and Ronald K. Miyamoto for Plaintiff and Appellant.

Sonnenschein, Nath & Rosenthal, Robert F. Scoular, Alan M. Posner, Laura R. Petroff, Saltarelli & Steponovich, Michael J. Steponovich, Jr., and Stephen A. Steponovich for Defendants and Appellants.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Robert Lawicki (Lawicki) appeals a judgment entered upon a $125,000 jury verdict in favor of plaintiff and appellant Kathleen Joyce Kelly-Zurian (Zurian) in a sexual harassment case. Defendants and appellants Wohl Shoe Company, Inc./Wohl Shoe Company-Fanfares Shoes Division (Wohl), Lawicki's former employer, separately appeal, contending Wohl is not liable for Lawicki's conduct. Zurian also appeals, contending she is entitled to a new trial against Wohl on the issue of punitive damages.

The issues presented include an employer's liability for sexual harassment by a supervisory employee. Due to Lawicki's status as a supervisor, Wohl is strictly liable to Zurian in compensatory damages for Lawicki's misconduct. (Gov. Code, § 12940, subd. (h)(1).) However, Zurian is not entitled to recover punitive damages against Wohl because Lawicki, although a supervisor, was not a managing agent of Wohl and there was no ratification. (Civ. Code, § 3294, subd. (b); *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 950 [160 Cal.Rptr. 141, 603 P.2d 58]; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822-823 [169 Cal.Rptr. 691, 620 P.2d 141].)

For the reasons discussed below, the judgment is affirmed in full.

## Factual and Procedural Background

Viewing the evidence in the light most favorable to the judgment (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 492, fn. 1 [102 Cal.Rptr. 795, 498 P.2d 1043]), the evidence showed:

In May 1979, Zurian was hired by Wohl as a manager trainee in its Fox Hills store. In 1980, she was promoted to manager of the Palos Verdes store where she remained about four years. In 1984, at the age of 25, Zurian was promoted to regional supervisor in charge of 6 different stores in the Los Angeles area.

At the time of Zurian's 1984 promotion, Lawicki was a company administrator and in charge of two supervisors, including Zurian.

During Zurian's first week in that new position while on a drive to a store in Oxnard, Lawicki put his hand on her knee and asked if she "fooled around." Zurian responded she wished he would leave her alone and that she just wanted to have a business relationship. She did not report the incident to anyone in the company at that time.

For the next three years, Lawicki sexually harassed Zurian both physically and verbally. He would come up from behind and put both his hands on her breast. He would pinch her buttocks as he walked by. He grabbed her crotch and asked "if [she] was wet." He made other graphic inquiries such as: "what kind of lingerie [she] was wearing underneath her clothes," "how was [her] pussy," "if [she] got any last night," "if [she] took it in the ass," "if [she] swallowed," and "if [she] gave head."

At no time did Zurian engage in any sexual activity with Lawicki.[1]

Zurian's testimony of harassment was corroborated by other witnesses. Koroush Dawoodi, a former Wohl manager, testified in 1987 he heard Lawicki state in front of Zurian, regarding a customer: "I bet you ten bucks she's not wearing underwear." Diana Carol Moon, another former Wohl employee, testified she heard Lawicki state to Zurian about another woman: "I wonder if she takes it up the ass."

In July 1987, Zurian complained to Fred Zarf, vice-president in charge of personnel at corporate headquarters in St. Louis. Zurian asked Zarf not to mention her name in connection with the matter.

---

[1] In direct contravention to Zurian's testimony, Lawicki testified he and Zurian had a consensual sexual relationship over a three-year period, and that he ended the relationship when Zurian told him she was pregnant.

In late August 1987, Zurian discussed Lawicki's conduct with two visiting Wohl managers, Rich Donnelly and David Neri. Donnelly wanted Zurian to confront Lawicki directly but Zurian refused. Nonetheless, at the conclusion of a management meeting at which Zurian and Lawicki were present, Donnelly asked Zurian if there was anything she wanted to bring up. Zurian left the room crying. The next day before their departure, Donnelly and Neri took Zurian aside and told her they had spoken to Lawicki and he wasn't going to do it anymore. They said Lawicki knew she had made a complaint but that she should not feel bad about working with him.

Thereafter, Zurian told Joseph Ennis, a vice-president in St. Louis, of Lawicki's behavior. Ennis said the company's hands were tied because Zurian was unwilling to confront Lawicki face to face, and therefore nothing could be done. Zurian was upset and asked what more she had to do and what more she had to give in order to be believed. Ennis said, "well, you don't have any video movies, do you?"

Ennis did not offer her another position in the company. Zurian tendered her resignation on September 3, 1987.

After her resignation, Zurian suffered from panic attacks consisting of anxiety, tightness in the chest and heart palpitations. She was depressed and unable to sleep. She began drinking and developed a serious drinking problem. She was diagnosed with posttraumatic stress disorder. She experienced recurring and intrusive recollections of the events, recurring nightmares of the sexual harassment and flashbacks of the events.

Zurian was unemployed for three months. Her salary, upon her termination from Wohl, was $28,000 per year.

In December 1988, Zurian commenced this action against Wohl and Lawicki, alleging sexual harassment and discrimination in employment, constructive wrongful discharge, intentional infliction of emotional distress and negligence.

The matter came to trial in July 1990 and was tried to a jury. The issue of punitive damages was bifurcated.

The jury rendered a verdict in favor of Zurian and against Lawicki, awarded compensatory damages in the amount of $125,000, and found Lawicki's conduct involved oppression or malice.[2] The jury returned a verdict in favor of Wohl. Judgment on the verdict was filed August 2, 1990.

---

[2]Zurian apparently did not pursue her punitive damage claim against Lawicki.

The parties filed various posttrial motions. On September 25, 1990, the trial court granted Zurian's motion for judgment notwithstanding the verdict (JNOV) against Wohl in the sum of $125,000. It also granted Zurian's motion for attorney fees as against Wohl and Lawicki in the sum of $103,000. Zurian's motion for a new trial on the issue of punitive damages against Wohl was denied. The trial court also denied Lawicki's motions for JNOV and new trial. Wohl's motion for attorney fees also was denied.

The order granting JNOV against Wohl was filed October 9, 1990. Thus, Wohl became a party to the $125,000 judgment obtained by Zurian against Lawicki.

Lawicki, Wohl and Zurian each appealed.

Lawicki filed notice of appeal on October 22, 1990, from the August 2, 1990, judgment and the September 25, 1990, order granting Zurian's motion for attorney fees.

Zurian filed notice of appeal on November 13, 1990, seeking review of the August 2, 1990, judgment on the verdict in favor of Wohl and the September 25, 1990, order denying a new trial against Wohl.

Wohl filed notice of appeal on November 21, 1990, from the September 25, 1990, order granting Zurian's motion for JNOV, awarding her $103,000 in attorney fees and denying Wohl attorney fees.

## I. LAWICKI'S APPEAL

### CONTENTIONS

Lawicki contends: (1) the trial court abused its discretion in its rulings on motions *in limine* which caused erroneous exclusion and admission of evidence; (2) the trial court abused its discretion in limiting the length and scope of the cross-examination of Zurian; (3) no substantial evidence exists which can support the jury verdict against Lawicki; (4) no substantial evidence exists to support the amount of the jury verdict; (5) Lawicki was prejudiced by erroneous instructions submitted to the jury and by the trial court's refusal to give proper jury instructions submitted by Lawicki; and (6) Lawicki is entitled to a reversal of the judgment for the trial court's erroneous denial of his motion for new trial.

## DISCUSSION

1. *No merit to Lawicki's challenge to sufficiency of evidence to support verdict against him.*

 a. *Substantial evidence exists of pervasive sexual harassment.*

█ Lawicki argues Zurian failed to introduce evidence which would establish the pervasive and continuing nature of the alleged harassment. Lawicki asserts his alleged acts were intermittent at worst, and there were significant periods when he was "on his best behavior." The argument fails.

When the workplace is permeated with discriminatory intimidation, ridicule and insult that is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' " the law is violated. (*Harris* v. *Forklift Systems, Inc.* (1993) __ U.S. __, __ [126 L.Ed.2d 295, 301, 114 S.Ct. 367].)

The instant conduct easily meets this test. Rather than a few isolated episodes, the harassment by Lawicki persisted for over three years. Further, the harassment was not limited to verbal abuse. Lawicki also touched Zurian's breast and crotch and he regularly pinched her buttocks. Accordingly, we reject Lawicki's contention there was no substantial evidence of pervasive sexual harassment.

 b. *No merit to Lawicki's arguments re credibility.*

Lawicki argues at length the jury should have believed him and not Zurian.

█ Because a reviewing court will not reweigh the evidence or pass upon the credibility of witnesses (*Mosesian* v. *Bagdasarian* (1968) 260 Cal.App.2d 361, 368 [67 Cal.Rptr. 369]), and the trier of fact is entitled to accept or reject all or any part of the testimony of any witness (*ibid.*), Lawicki's arguments in this regard are unavailing.

 c. *Damage award supported by substantial evidence.*

█ Lawicki contends the $125,000 damage award is excessive because Zurian's wage loss was only about $7,000, (representing three months' salary), her medical bills were merely $320, and the remainder of the award could only have been for emotional distress. Lawicki asserts there was no specific or competent evidence of emotional distress and that Zurian had a total of two psychotherapy sessions more than a year after she left Wohl.

In examining this contention, we are mindful "[t]the amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial court on a motion for new trial. . . . [A]ll presumptions are in favor of the decision of the trial court [citation]. The power of the appellate court differs materially from that of the trial court in passing on this question. An appellate court can interfere on the ground the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury." (*Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506-507 [15 Cal.Rptr. 161, 364 P.2d 337]; accord, *Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 727 [236 Cal.Rptr. 633].)

Here, there was substantial evidence of significant emotional distress. As indicated, the evidence established that after her resignation, Zurian suffered from panic attacks consisting of anxiety, tightness in the chest and heart palpitations. She was depressed and unable to sleep. She began drinking and developed a serious drinking problem. She was diagnosed with posttraumatic stress disorder. Her symptoms included recurring and intrusive recollections of the events, recurring nightmares of the sexual harassment and flashbacks of the events.

Accordingly, we decline to interfere with the jury's $125,000 damage award, which the trial court left undisturbed on the motion for new trial.

2. *Trial court's rulings on motions in limine were within its sound discretion.*

The trial court granted Zurian's motions *in limine*, excluding evidence concerning: (1) the viewing of X-rated videotapes by Zurian and her spouse; (2) her abortions; and (3) her prior sexual history and sexual conduct with individuals other than Lawicki or other Wohl employees.

The trial court also granted Wohl's motions *in limine* to exclude any evidence of: (1) any alleged sexual affairs of Lawicki with anyone other than Zurian; and (2) any alleged claims of sexual harassment against Lawicki by anyone other than Zurian.

The trial court denied Wohl's motion for an order allowing defendants to offer evidence of Zurian's sexual conduct with persons other than Lawicki to attack her credibility.

Lawicki contends these rulings amounted to an abuse of discretion. His argument is without merit.

Any viewing of adult videotapes by Zurian and her spouse was irrelevant. Such evidence could not logically lead to prove or disprove any of the disputed issues in the case. Further, any marginal relevance of the videotape viewing would have been substantially outweighed by the probability of undue prejudice to Zurian. (Evid. Code, § 352.)

With respect to evidence of Zurian's abortions, in view of the fact Lawicki stipulated at trial he did not father the fetus which Zurian was carrying in the latter part of 1986, the subject of abortion was irrelevant. Again, even assuming the evidence was marginally relevant, given the divisiveness of the issue and extreme potential for prejudice, exclusion of the evidence was proper. (Evid Code, § 352.)

As for the remaining motions, the trial court excluded evidence of Zurian's prior sexual history and any sexual conduct with individuals other than Lawicki or other Wohl employees, any alleged sexual affairs of Lawicki with anyone other than Zurian, and any alleged claims of sexual harassment against Lawicki by anyone other than Zurian. Thus, the trial court's rulings, which in effect were reciprocal, served to narrow the case to the extent possible to what happened between Zurian and Lawicki. We perceive no abuse of discretion in these rulings.

### 3. *Trial court did not abuse its discretion in limiting the cross-examination of Zurian.*

The record reflects during cross-examination of Zurian, the trial court stated to Ms. Petroff, counsel for Wohl, "I have heard these questions framed by you before. You have five minutes more to cross-examine, that's it. [¶] If I hear something new I may extend the time. If I don't hear anything new in five minutes you sit down."

Based thereon, Lawicki contends the trial court unreasonably restricted defense counsel's ability to cross-examine Zurian fully.

The argument is without merit. Any limitation on cross-examination of Zurian *by Wohl's counsel* did not impair cross-examination of Zurian by Lawicki's counsel. Because Lawicki's counsel was not hindered in cross-examining Zurian, this contention involving Wohl's counsel is unavailing to Lawicki.

Further, " '[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted.' " (*McCarthy* v. *Mobile Cranes, Inc.* (1962) 199 Cal.App.2d 500, 507 [18 Cal.Rptr. 750].)

The record reflects defense counsel had reasonable time and opportunity to conduct cross-examination of Zurian. Zurian testified on direct examination on the first day of trial, July 23, 1990, commencing in the afternoon. She completed her direct testimony before noon the following day. She was thereafter subjected to cross-examination for the remainder of the second, through the mid-morning of the fourth day of trial. In view of the above, and because Lawicki fails to specify on which issues the cross-examination was inadequate, the contention is without merit.

4. *No merit to Lawicki's contentions re instructional error.*

 a. *Trial court properly refused Lawicki's BAJI No. 2.60 as modified.*

■ Lawicki contends the trial court prejudicially erred in rejecting his version of BAJI No. 2.60, setting forth the essential elements of a sexual harassment claim, and in instructing the jury on Zurian's version.

Lawicki's proposed instruction was similar to Zurian's, except Lawicki's stated the plaintiff had the burden of proving "defendant's conduct could have interfered with a reasonable employee's work performance *and would have seriously affected the psychological well-being of a reasonable employee* in that she was actually offended." (Italics added.) (This language was drawn from *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609-610 [262 Cal.Rptr. 842] [*Fisher*].)

The United States Supreme Court in *Harris* has clarified that conduct need not seriously affect an employee's psychological well-being to be actionable as abusive work environment harassment. (*Harris* v. *Forklift Systems, Inc., supra,* __ U.S. at p. __ [126 L.Ed.2d at p. 301].) So long as the environment reasonably would be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious. (*Id.,* at p. __ [126 L.Ed.2d at p. 302].) Accordingly, the trial court properly refused Lawicki's version of BAJI No. 2.60.

 b. *Trial court properly refused Lawicki's proposed special instruction No. 2.*

■ Lawicki proposed special instruction No. 2, which provided in relevant part: "If you determine that no tangible job detriment has been established by plaintiff, then plaintiff has the burden of showing *by clear and convincing evidence* that the sexually harassing conduct was pervasive and destructive of the work environment." (Italics added.) The trial court refused the instruction.

Lawicki contends the ruling was error because the higher "clear and convincing" evidentiary standard is consistent with *Fisher*, which stated, inter alia: " '[W]hile an employee need not prove tangible job detriment to establish a sexual harassment claim, the absence of such detriment requires *a commensurately higher showing* that the sexually harassing conduct was pervasive and destructive of the working environment.' [Citation.]" (*Fisher*, *supra*, 214 Cal.App.3d at p. 610, italics added.) Lawicki misreads *Fisher* because the quoted language in *Fisher* is not authority for the proposition that a plaintiff must meet a standard of "clear and convincing proof" on the pervasiveness of sexual harassment.

We further observe that to single out sexual harassment plaintiffs to meet the higher standard of "clear and convincing evidence," the same standard which is required for an award of punitive damages (Civ. Code, § 3294, subd. (a)), would impose an unfair and inappropriate burden on such claimants. We conclude the trial court properly instructed the jury on the usual "preponderance of the evidence" standard.

5. *Lawicki's contention regarding denial of his motion for new trial fails.*

 Lawicki contends the trial court should have granted his motion for new trial instead of deferring to a verdict the trial court believed was improper.

 When a trial court rules upon a motion for a new trial made upon the ground of insufficiency of the evidence, the judge is required to weigh the evidence and judge the credibility of witnesses. (*Locksley* v. *Ungureanu* (1986) 178 Cal.App.3d 457, 463 [223 Cal.Rptr. 737].) "While it is the exclusive province of the jury to find the facts, it is the duty of the trial court to see that this function is intelligently and justly performed, and in the exercise of its supervisory power over the verdict, the court, on motion for a new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict." (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14].)

In ruling on the motion, the trial judge does not disregard the verdict, or decide what result it would have reached if the case had been tried without a jury, but instead ". . . it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict." (*People* v. *Robarge*, *supra*, 41 Cal.2d at p. 633; accord, *Dominguez* v. *Pantalone* (1989) 212 Cal.App.3d 201, 215 [260 Cal.Rptr. 431].)

■ Thus, merely because the trial court indicated it "would not have come to the same result [as the jury]" did not require the trial court to grant a new trial. The trial court also stated: "This appears to be a case . . . *where different minds could fairly come to different conclusions*." (Italics added.) Because the trial court implicitly found there was sufficient credible evidence to support the verdict, and that the jury was reasonable in believing the witnesses it apparently had believed in reaching the verdict, the trial court properly declined to substitute its own judgment for that of the jury.

### CONCLUSION AS TO LAWICKI'S APPEAL

Each of Lawicki's contentions lacks merit.

### II. WOHL'S APPEAL

### CONTENTIONS

Wohl contends: (1) the trial court erroneously granted JNOV against Wohl on a theory of strict liability; (2) under the instructions, the verdict in favor of Wohl was proper and must be reinstated; (3) the trial court abused its discretion in excluding evidence of Zurian's 1987 abortion; (4) the award of more than $100,000 for emotional distress and humiliation was contrary to law; and (5) the award of damages for lost wages and Dr. Wood's fee was contrary to law.

### DISCUSSION

*1. Trial court properly granted JNOV against Wohl because Lawicki was a supervisory employee.*

■ After the jury found Wohl not liable, the trial court entered JNOV against Wohl due to Lawicki's status as a supervisor. The trial court explained: "[A]lthough the matter went to the jury, the jury was required to, if they found against Lawicki, to find against Wohl solely because Lawicki is a supervisor within the meaning of the code. It's for that reason that I think a J.N.O.V. should be granted. It is a form of strict liability."

Wohl contends an employer is liable for hostile environment sexual harassment by a supervisor only when such liability would be imposed under common law agency principles, i.e., when the supervisor has used his job authority to harass the employee or when appropriate company management has been notified and has not taken adequate steps to remedy the situation.

Wohl argues that in absolving it of any liability for sexual harassment of Zurian by Lawicki, the jury could have found that Lawicki was not a

supervisor, or was not acting as a supervisor, or that Lawicki did not take advantage of his authority in the company in committing the alleged harassment, or that management-level employees did not know of Zurian's claimed sexual harassment, and/or that Wohl provided a reasonable avenue of complaint for victims of sexual harassment.

Wohl's analysis is unpersuasive. The California Fair Employment and Housing Act (FEHA), at Government Code section 12940 (section 12940), states in relevant part: "It shall be an unlawful employment practice, . . . [¶] . . . [¶] (h)(1) For an employer, . . . because of . . . sex, . . . to harass an employee . . . . Harassment of an employee . . . by an employee *other than an agent or supervisor* shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Italics added.)

By providing harassment of an employee by an employee *other than an agent or supervisor* shall be unlawful *only* if the employer knows or should have known of the harassment and fails to intervene, section 12940 reflects that harassment by a supervisor is unlawful regardless of whether the employer knows or should have known and fails to intervene.[3, 4]

*Fisher* properly acknowledged this distinction in the FEHA between agents and supervisors and other employees. *Fisher* observed: "Under [the] FEHA, *an employer is 'strictly liable for the harassing conduct of its agents and supervisors.'* [Citation.]" (*Fisher, supra,* 214 Cal.App.3d at p. 608, fn. 6, italics added.)[5] On the other hand, "[t]he standard for *coworker liability* is that an employer is liable where it, its agent or supervisors ' "knows or should have known of this conduct and fails to take immediate and appropriate corrective action." ' [Citation.]" (*Fisher, supra,* at p. 608, fn. 6, italics added.)

---

[3]Consistent with section 12940, the California Code of Regulations, title 2, section 7287.6, subdivision (b)(2), states: "Harassment of an . . . employee by an employer . . . , its agents or *supervisors* is unlawful." (Italics added.) In contrast, "[h]arassment of an . . . employee by an employee *other than those listed in subsection (b)(2) above* is unlawful if the employer . . . knows of such conduct and fails to take immediate and appropriate corrective action." (Cal. Code Regs., tit. 2, § 7287.6, subd. (b)(3), italics added.)

[4]Because Lawicki was a supervisor, it is unnecessary for purposes of this opinion to discuss the interpretation of "agent" as that term is used in section 12940. However, under the statute, "agent" clearly is not synonymous with "employee."

[5]*Valdez* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1043 [282 Cal.Rptr. 726], is contrary. Citing to federal law, *Valdez* states ". . . in cases of sexual harassment by a supervisor or co-employee, the employer's liability may turn on the question of notice to appropriate company officials." (*Id.,* at p. 1060, fn. 3.) Because the instant case is governed by the California FEHA, *Valdez* is unavailing to Wohl.

Thus, under section 12940, to hold Wohl liable for Lawicki's harassment of Zurian, all that needed to be shown was Lawicki's position as a supervisor.

On this record, that fact was established. Zurian's testimony was uncontroverted that at the time of her 1984 promotion, Lawicki was a company administrator and in charge of two supervisors, including Zurian. Further, Robert Schefter, a managerial employee called by Wohl, testified that during 1986/1987, Zurian reported to Lawicki while he served as general manager of the Fanfares stores. Also, Lawicki testified commencing April 1, 1987, Zurian was a manager under his supervision and that he had the power to fire her. Thus, the evidence established Lawicki functioned as Zurian's supervisor for several years.

In addition, Lawicki testified he had "touch[ed] . . . Zurian in a sexual manner . . . while at work[.]" Because Lawicki admitted to touching Zurian sexually at the workplace, the evidence further established Lawicki was aided in accomplishing the harassment by the existence of the supervisory relationship. (See *Capitol City Foods, Inc.* v. *Superior Court* (1992) 5 Cal.App.4th 1042, 1049, fn. 2 [7 Cal.Rptr.2d 418].)

Accordingly, the trial court properly granted JNOV against Wohl.

2. *No merit to Wohl's contention that under the instructions, the verdict in favor of Wohl was proper and must be reinstated.*

Wohl contends under Zurian's instructions adopted by the trial court, the jury was required to find, inter alia, Lawicki was "acting as a supervisor" for Wohl in order to return a verdict that Wohl was liable for sexual harassment of Zurian. Under the instructions, the jury could find, and on appeal it must be presumed it did find, Lawicki's actions were not done while he was "acting as a supervisor" and/or Lawicki was not a "supervisor." Wohl urges even assuming the trial court's theory of strict employer liability for supervisor harassment were adopted, under California law there is no strict employer liability for sexual harassment by a nonsupervisory co-employee.

Wohl's arguments fail because, as discussed above, the FEHA imposes strict employer liability for harassment by a supervisory employee (§ 12940, subd. (h)(1); (*Fisher, supra,* 214 Cal.App.3d at p. 608, fn. 6), and the evidence established Lawicki was Zurian's supervisor and not a co-employee.

Further, the instructions and verdict reflect the jury necessarily determined Lawicki was acting as Wohl's supervisor rather than as Zurian's

co-employee. The jury was instructed: "In order to recover damages for sexual harassment, . . . Zurian has the burden of proving by a preponderance of the evidence *all of the facts* necessary to establish the following: [¶] . . . [¶] 6. *That . . . Lawicki was acting as a supervisor for . . . Wohl . . . .*" (Wohl does not contend this instruction was erroneous.) Therefore, in finding for Zurian and against Lawicki on the sexual harassment claim, the jury necessarily found Lawicki committed the harassment in his capacity as a supervisor for Wohl.

Wohl further contends even if Lawicki were Zurian's supervisor, liability may be imposed on Wohl only if the harassment was committed within the supervisor's scope of employment. Wohl contends Lawicki acted outside the scope of his employment because company policy prohibited such harassment.

The argument is without merit. As indicated, the jury determined Lawicki acted within the scope of his employment. That finding was proper. In *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 207, 209 [285 Cal.Rptr. 99, 814 P.2d 1341], the Supreme Court held the city could be held vicariously liable for a rape committed by an on-duty police officer because "[t]ortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment. [Citations.]" Therefore, the fact Lawicki's conduct deviated from official company policy does not absolve Wohl of liability.

Consequently, we reject Wohl's contention the verdict in its favor was proper and should be reinstated.

3. *Trial court did not err in excluding evidence of Zurian's 1987 abortion.*

Wohl also contends the trial court abused its discretion in disallowing evidence of Zurian's 1987 abortion. For the reasons already stated in part I. 2. of this opinion, the contention is without merit.

However, we briefly address Wohl's additional argument the abortion was significant because it was the event which led Lawicki to terminate his relationship with Zurian. Wohl urges had the jury known of these circumstances, it might well have concluded the termination of the relationship by Lawicki angered Zurian to the extent she concocted a tale of harassment to punish Lawicki for rejecting her.

The argument is utterly without merit. Lawicki testified he stopped the affair because Zurian became *pregnant* and that Zurian's *pregnancy* (not her

abortion), "shocked [him] into a little reality of the dangerousness of having sexual intercourse."

Accordingly, Lawicki was not precluded from explaining why he ended the relationship with Zurian, and the jury was able to consider the possible impact of Lawicki's alleged rejection of Zurian upon Zurian's credibility.

4. *No merit to Wohl's challenge to emotional distress award.*

█ For the reasons already set forth in part I.1.c. of this opinion, Wohl's challenge to the amount of the emotional distress award fails.

5. *No merit to Wohl's challenge to award for lost wages and Dr. Wood's fee.*

█ Wohl contends the claimed economic damages of $7,320 are not sustainable.

Wohl contends Zurian is not entitled to recover $7,000 for three months' lost wages because she failed to mitigate.

Wohl also argues the $320 charged by Dr. Wood is not compensable as damages because Zurian did not go to him for treatment. Instead, she went to be evaluated prior to trial.

Even assuming any merit to either of these arguments, they are unavailing. Wohl did not request a special verdict as to economic damages. We cannot speculate on the basis of the jury's verdict and cannot surmise how much the jury awarded for economic damages. Further, the evidence of emotional distress, standing alone, is sufficient to sustain the entire $125,000 general verdict. Therefore, Wohl's challenge to Zurian's economic damage claims must fail.

### Conclusion As to Wohl's Appeal

Each of Wohl's contentions is without merit.

### III. Zurian's Appeal

### Contentions

Zurian contends: (1) an employer is strictly liable for the sexually harassing conduct of its supervisors; (2) the trial court's grant of JNOV against

Wohl was proper; (3) the trial court failed to properly instruct the jury on strict liability as to Wohl; (4) as a matter of law, Wohl is liable for punitive damages based on the corporate ratification on the part of its managing agent Lawicki; (5) the trial court failed to properly instruct the jury on the subject of managing agent under Civil Code section 3294, subdivision (b); and (6) Zurian was prejudiced by the trial court's failure to grant her a new trial on punitive damages against Wohl.

DISCUSSION

1. *Trial court properly denied Zurian's motion for new trial against Wohl on issue of punitive damages.*

The trial court bifurcated the issue of punitive damages, which was to be tried later, depending on the outcome of the initial phase.

We conclude that in view of the evidence presented during the first phase of the trial, the trial court properly declined to proceed with the punitive damage phase against Wohl.

a. *General principles re employer liability for punitive damages.*

■ Wohl's potential liability for punitive damages is not based on section 12940. Although section 12940, subdivision (h)(1), makes an employer liable for harassment by a supervisory employee irrespective of the employer's lack of knowledge or the employer's attempts to remedy the situation, the statute is not authority for the proposition the employer also is strictly liable for *punitive* damages for a supervisor's conduct.

The applicable statute is Civil Code section 3294, subdivision (b), which states in relevant part: "*An employer shall not be liable for [punitive] damages* pursuant to subdivision (a), based upon acts of an employee of the employer, *unless the employer* had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or *was personally guilty of oppression, fraud or malice*. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization or *act of oppression, fraud or malice* must be on the part of an officer, director, *or managing agent* of the corporation." (Italics added.)

■ Consistent therewith, *Agarwal v. Johnson, supra*, 25 Cal.3d at page 950 stated: " ' "While an employer may be liable for an employee's tort

under the doctrine of *respondeat superior*, he is not responsible for punitive damages where he neither directed nor ratified the act. . . . California follows the rule laid down in Restatement of Torts, section 909, which provides *punitive damages can properly be awarded against a principal because of an act by an agent if*, but only if '(a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) *the agent was employed in a managerial capacity and was acting in the scope of employment*, or (d) the employer or a manager of the employer ratified or approved the act." ' " (Second and third italics added.)

b. *Trial court erred in ruling the misconduct of a managing agent must be ratified by the employer before the employer can be held liable for punitive damages, but harmless.*

■ It appears the trial court denied Zurian's motion for a new trial against Wohl on the issue of punitive damages due to a misapprehension as to the law.

The record reflects the following colloquy occurred during the argument on the motion for new trial:

Zurian's counsel stated: "The evidence was such that the Court could not come to another conclusion [but] that Robert Lawicki was indeed a managing agent under [Civil Code section] 3294, and as such would expose the company to punitive damages. The act of the managing agent being sufficient to cause liability for punitives on the part of the company, no further ratification being required."

The trial court responded: "For punitives, I disagree."

Zurian's counsel was correct. An act of oppression, fraud or malice, by an officer, director or *managing agent*, is sufficient to impose liability on a corporate employer for punitive damages, without any additional showing of ratification by the employer. (Civ. Code, § 3294, subd. (b); *Agarwal, supra*, 25 Cal.3d at p. 950.)

The trial court's difficulty with this issue is understandable in view of an apparent deficiency in BAJI No. 14.73.1 (1989), which was given in this case. That instruction, which pertains to punitive damages against a principal for acts of an agent, covers the grounds of advance knowledge by a principal of the agent's unfitness, as well as authorization and ratification. However, the instruction fails to clearly state punitive damages also may be imposed

against a principal for an act of oppression, fraud or malice committed by an officer, director or *managing agent,* without any further showing of authorization or ratification by the corporate principal. Due to this deficiency in the BAJI instruction, the jury was not directed to consider Wohl's liability for punitive damages on the ground of the misconduct of a managing agent.

Nonetheless, reversal is unnecessary because, as discussed below, the trial court's denial of Zurian's new trial motion was correct in result. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

 c. *Remand for determination of punitive damages against Wohl is unwarranted because Zurian failed to present any evidence to show Lawicki was a managing agent.*

■■■ As indicated, in returning a verdict against Lawicki, the jury expressly found Lawicki's conduct involved "oppression . . . or malice." (Civ. Code, § 3294, subd. (a).)

Further, in finding against Lawicki on the issue of sexual harassment, the jury necessarily found "6. [t]hat . . . Lawicki was acting as a supervisor for . . . Wohl . . . ." Thus, the jury determined Lawicki acted within the scope of his employment.

However, irrespective of the deficiency in BAJI No. 14.73.1, on this record the jury could not have made the finding that Lawicki was a managing agent, which finding is essential for the imposition of punitive damages against Wohl.[6]

Although Wohl does not dispute Zurian's assertion there was no one in a superior position to Lawicki in Southern California, the evidence is clear Lawicki was not a managing agent. ■■■ "The determination whether employees act in a managerial capacity [i.e., are managing agents] does not necessarily hinge on their 'level' in the corporate hierarchy. Rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at pp. 822-823.)

■■■ In an attempt to show Lawicki was a managing agent, Zurian argues Lawicki had immediate and direct control over her with the responsibility for supervising her performance. However, the fact Zurian reported

---

[6]The verdict reflects the jury determined Wohl did not ratify Lawicki's misconduct. Zurian has not challenged the sufficiency of the evidence to support that finding.

to Lawicki and that he had the authority to terminate her merely reflect Lawicki was Zurian's *supervisor*, not that he was a managing agent.

Not only did Zurian fail to present any evidence to show Lawicki was in a policymaking position, but Wohl presented substantial evidence to the contrary. Ennis testified Lawicki did not "have authority to change or establish business policy for Fanfares in Southern California[.]" That authority rested in the St. Louis office, "whether it be the operational part of the business, set the policies, the guidelines, administered salaries, reviews, and the people in the field advise St. Louis [and make] recommendations and St. Louis acts on them, signs the salary increase and so forth. But it is administered through the St. Louis office." Lawicki could not even set Zurian's salary or give her a raise without authorization from St. Louis.

Thus, the uncontroverted evidence established Lawicki was not in a policymaking position and therefore was not a managing agent for Wohl. Accordingly, Wohl was not liable in punitive damages to Zurian for Lawicki's conduct.

It is unnecessary to address any remaining arguments of the parties.

### CONCLUSION AS TO ZURIAN'S APPEAL

Because Zurian failed to present any substantial evidence that Lawicki was involved in setting company policy for Wohl, the record established Lawicki was not a managing agent. The trial court therefore properly denied Zurian's motion for a new trial against Wohl on the issue of punitive damages.

### DISPOSITION

The judgment is affirmed in full. Each party to bear its own costs on appeal.

Croskey, J., and Hinz, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied April 28, 1994.