**Narash GINDA, Plaintiff,**

v.

**EXEL LOGISTICS, INC., Defendant.**

**No. Civ.S–98–0239FCDDAD.**

United States District Court,
E.D. California.

April 15, 1999.

John M. Riestenberg, Law Offices of John M. Riestenberg, Sacramento, CA, for plaintiff.

Robert M. Pattison, Seth L. Neulight, Jackson, Lewis, Schnitzler & Krupman, San Francisco, CA, for defendant.

### MODIFIED MEMORANDUM AND ORDER [1]

DAMRELL, District Judge.

Plaintiff Narash Ginda brings this diversity action [2] alleging that he was harassed and discriminated against based on his race, national origin and religious beliefs in violation of the California Fair Employment and Housing Act ("FEHA"), Cal.Gov. Code § 12900, *et seq.*, and public policy. Plaintiff further contends that he complained of said harassment and discrimination, and as a result, was retaliated against in violation of FEHA, *id.* Plaintiff's complaint includes a claim for punitive damages. Defendant Excel Logistics, Inc. ("Exel") moves this court for an order summarily adjudicating plaintiff's punitive damage claim on the ground that "the undisputed evidence establishes that the alleged conduct [which forms the gravamen of plaintiff's complaint] was neither taken nor ratified by any 'managing agent' of [Exel] as required to hold [Exel] liable for punitive damages under California law." Because the court finds there exists a triable issue of material fact as to whether the alleged conduct complained of by plaintiff was taken or ratified by a managing agent of Excel, Excel's motion is denied.

### BACKGROUND

Plaintiff, an East Indian, was employed by Exel from June 1994 until his discharge on November 14, 1996. Exel provides warehousing and logistics services to companies throughout the United States, and is headquartered in Westerville, Ohio. Plaintiff worked as a forklift operator at Exel's Proctor and Gamble regional distribution center in Woodland, California ("Woodland RDC"). Plaintiff contends that during the course of his employment with Exel he was subjected to continuous harassment and discrimination based on his race, national origin and religious beliefs. For example, plaintiff contends that he was called "camel jockey," "camel," "raghead," "Hindu," and "Ghandi" on a daily basis by his co-workers and supervisors.[3] Plaintiff also contends that he complained of said harassment and discrimination to his group leaders, supervisors and Woodland RDC General Manager Dale Bailey to no avail. Following said complaints, plaintiff contends the harassment and discrimination worsened, and that he was ultimately terminated in retaliation for his complaints.

### STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to in-

---

1. The court has modified its memorandum and order filed April 13, 1999.

2. This action was initially filed in Yolo County Superior Court and removed to this court on February 6, 1998 on the basis of diversity jurisdiction.

3. Exel filed evidentiary objections to the declaration of Narash Ginda filed in support of plaintiff's opposition. Specifically, Exel objects to various statements attributed to third parties on hearsay and relevance grounds. Said statements include the name calling referred to herein. As Exel acknowledges in its reply brief, such statements are irrelevant to the issue currently before the court, namely whether any wrongful conduct was taken or ratified by a managing agent of Exel. Accordingly, the court declines to rule on Exel's objections.

terrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Assn.,* 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 57 (2d Cir.

1985); *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

The standard of proof necessary to prevail on a punitive damages claim is "clear and convincing" evidence. Cal.Civ.Code § 3294(a). "When a motion for summary judgment is made in a case where the plaintiff's claim carries a clear and convincing burden of proof, the evidence and all inferences which can reasonably be drawn therefrom must meet that higher standard." *Rowe v. Superior Court,* 15 Cal. App.4th 1711, 1724, 19 Cal.Rptr.2d 625 (1993); *see also, Anderson,* 477 U.S. at 254–255, 106 S.Ct. 2505.

## ANALYSIS

Excel denies the material allegations contained in plaintiff's complaint. The truthfulness of said allegations, however, are irrelevant for purposes of the instant motion. Exel moves for summary adjudication of plaintiff's punitive damage claim. Exel contends that "the undisputed evidence establishes that the alleged conduct [which forms the gravamen of plaintiff's complaint] was neither taken nor ratified by any 'managing agent' of [Exel] as required to hold [Exel] liable for punitive damages under California law." Exel's Not. of Mot. at 1.

Under California law, an employer may not be held liable for punitive damages based upon the acts of its employees unless the employer (1) "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others," (2) "authorized or ratified the wrongful conduct for which the damages are awarded," or (3) "was personally guilty of oppression, fraud, or malice." Cal.Civ.Code § 3294(b). With respect to a corporate employer, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or *managing agent* of the corporation." *Id.* (emphasis added).

"The determination of whether employees act in a managerial capacity ... does not necessarily hinge on their level in the corporate hierarchy. Rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 823, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). *Egan* arose in the insurance context and concerned whether a claims manager and claims adjuster were acting within their "managerial capacity," for purposes of holding their employer liable for punitive damages. The California Supreme Court held that, "[w]hen employees dispose of insureds' claims with little if any supervision, they possess sufficient discretion for the law to impute their actions concerning those claims to the corporation." *Id.* In the employment context, the fact that an employee reports to a particular individual with the authority to terminate the employee's employment merely reflects that the individual is a supervisor, not that he or she was a managing agent. *Kelly–Zurian v. Wohl*, 22 Cal.App.4th 397, 421, 27 Cal.Rptr.2d 457 (1994). Because the case at bar involves the handling of "claims" in an employment context, both decisions are instructive. Exel's suggestion that the holding in *Egan* is properly limited to the insurance context is without merit. *Egan* is the seminal case on what constitutes a "managing agent" for purposes of § 3294(b), and is consistently cited by courts, including the court in *Kelly–Zurian*, for the standard set forth therein.

Dale Bailey was the General Manager at the Woodland RDC for the majority of plaintiff's employment.[4] Exel contends that, as General Manager, Bailey's authority was limited to the operation of the Woodland RDC. According to Exel, Bailey did not have the authority to (1) determine the Woodland RDC's operating budget, (2) obtain lines of credit, (2) determine the rates Exel would charge Proctor

& Gamble for Exel's services, (3) set or determine "work rules" concerning Exel's expectations for employees as to conduct and job performance, (4) determine wage rates, or (5) change the fringe benefits offered to employees. Mem. of P. & A. in Supp. of Exel's Mot. at 5–6. Conspicuously absent from Exel's list of areas over which Bailey had no authority is the handling of employee complaints, including those for discrimination and harassment, at the Woodland RDC. Indeed, according to Bailey, he had virtually unlimited discretion in handling of such complaints.

In his capacity as General Manager, Bailey supervised approximately 120 employees. Bailey Dep., 135:19:136:2. There was no on-site human resources representative at the Woodland RDC. *Id.* at 68:3–15. There was no formal procedure for employees to follow in lodging complaints of any kind, other than Exel's "open door policy." Each employee was provided with an "Associate Handbook" which contained a statement regarding an "open door policy." *Id.* at 56:5–7. Pursuant to this policy, "an associate could come to any manager at any time [with a complaint]." *Id.* at 56:18–21. In addition to the "open door policy" set forth in the Associate Handbook, employees at the Woodland RDC were informed verbally by Bailey that "if they had any issues or concerns they could see me or schedule an appointment with me." *Id.* at 63:12–14. Bailey could not recall any other statements or information given to employees about how to address problems in the work place. *Id.* at 64:13–21.

The only training Bailey received regarding human resource and labor issues was a one day seminar on "union issues and union avoidance." *Id.* at 50:19–51:7. Bailey did not receive any training with respect to the handling of racial harassment, discrimination or retaliation complaints. *Id.* at 51:15–19; 55:6–10; 131:5–10. The only training he received concern-

---

4. Jess Urrutia succeeded Bailey as General Manager in September 1996, approximately two months before plaintiff's termination on November 14, 1996.

ing discrimination in general concerned EEOC principles as they pertained to hiring. *Id.* at 53:4–54:5. Moreover, during Bailey's tenure at the Woodland RDC, the only training provided to any of its employees regarding sexual harassment or employment discrimination was a one day seminar regarding EEOC regulations and hiring and union activities attended by supervisors and Bailey. *Id.* at 132:19–133:9, 133:13–134:1. While Bailey testified that he could consult with Dave Burns at Exel's headquarters in Westerville, Ohio concerning human resource issues, he had complete discretion in determining whether to contact Burns. *Id.* at 71:20–72:6, 74:6–11, 122:7–14. During his two and one-half years at the Woodland RDC, Bailey received approximately one employee complaint every two weeks and could recall contacting Burns on only two occasions. *Id.* at 65:12–14, 69:19–20, 71:14–15. Neither of those occasions involved plaintiff. *Id.* at 70:17–18, 71:9–11.[5] Moreover, Bailey never informed employees that they could go to Burns with their complaints, nor was he aware of any other individual so informing any employee. *Id.* at 122:20–123:15. In sum, Bailey had complete discretion in the handling of employee complaints at the Woodland RDC, and there was no mechanism in place for plaintiff, or any other employee, to communicate his or her complaints to anyone with greater authority than Bailey. *Id.* at 130:4–8.[6]

Like the insurance claims manager and adjuster in *Egan,* Bailey "exercised broad discretion in the disposition of plaintiff's claim." 24 Cal.3d at 823, 169 Cal.Rptr. 691, 620 P.2d 141. The record in *Egan* demonstrated that the claims manager had "ultimate supervisory and decisional authority regarding the disposition of all claims, like that of plaintiff, processed through the Los Angeles office." Likewise, the record before this court demonstrates that Bailey exercised similar authority regarding the disposition of employee complaints, like that of plaintiff, handled in the Woodland RDC. Accordingly, a triable issue of material fact exists as to whether Bailey was a "managing agent" for purposes of Cal. Civ.Code § 3294(b).[7]

Exel accurately notes that in *Kelly–Zurian* the court held that the company administrator who (1) was plaintiff's supervisor, (2) was the highest ranking employee in plaintiff's region, and (3) possessed the authority to terminate plaintiff's employment, was not a "managing agent," where

**5.** At oral argument, counsel for Exel made much of the fact that on the one occasion Bailey testified that he received a discrimination complaint, he contacted Mr. Burns. This argument ignores that Bailey had sole discretion in determining whether or not to contact Burns. The fact that he contacted him on this one occasion does not establish, as Exel suggests, that company policy concerning the handling of employee complaints at the Woodland RDC was set at Exel's headquarters.

**6.** Exel's reliance on plaintiff's failure to "communicate with any supervisory employees at a higher level than General Manger of the Woodland RDC," is somewhat disingenuous as there was no mechanism in place for employees to do so.

**7.** In their moving papers, Exel contends that "the undisputed evidence establishes that the alleged conduct [which forms the gravamen of plaintiff's complaint] was neither taken nor ratified by any 'managing agent' of [Exel] as required to hold [Exel] liable for punitive damages under California law." Exel's Not. of Mot. at 1. Exel, however, does not address the ratification argument in its briefs, but instead focuses only on whether any of plaintiff's supervisors were managing agents. An employer may be held liable for punitive damages under § 3294 where the oppressive, fraudulent or malicious act is performed, approved, or *ratified* by a managing agent. *See, e.g., College Hosp. v. Superior Court,* 8 Cal.4th 704, 723–26, 34 Cal.Rptr.2d 898, 882 P.2d 894 (1994); *Hobbs v. Bateman Eichler, Hill Richards, Inc.,* 164 Cal.App.3d 174, 193, 210 Cal.Rptr. 387 (1985). "Corporate ratification in the punitive damage context requires actual knowledge of the conduct and its outrageous nature." *College Hosp.,* 8 Cal.4th at 726, 34 Cal.Rptr.2d 898, 882 P.2d 894. Plaintiff has presented evidence that Bailey knew of the alleged discriminatory conduct, including its outrageous nature, and chose to do nothing about it. Accordingly, a triable issue of material fact also exists as to whether Bailey ratified the alleged wrongful conduct.

he lacked the authority to set policies, guidelines and salaries. *Kelly–Zurian,* 22 Cal.App.4th at 421–22, 27 Cal.Rptr.2d 457. While the facts are similar in the case at bar, the court in *Kelly–Zurian* was silent as to the defendant administrator's authority concerning the handling of employee complaints. Significantly, there were management employees above the defendant administrator to whom plaintiff complained, and those management employees exercised their discretionary authority regarding the handling of her complaints. Here, it is clear that Bailey had virtually unlimited authority in handling employee complaints. Moreover, the is no evidence that employees at the Woodland RDC were aware of any management employee above Bailey to whom they could complain. Bailey, in effect, embodied both Exel's authority and policy regarding the handling of employee complaints for Exel at the Woodland RDC. The purposeful delegation of such discretionary authority to Bailey is sufficient to create a triable issue of material fact as to whether Bailey was a managing agent under § 3294(b).

## CONCLUSION

There is evidence in the record from which a jury could determine that clear and convincing evidence exists that Bailey was a managing agent of Exel. *See Rowe,* 15 Cal.App.4th at 1724, 19 Cal.Rptr.2d 625. Accordingly, Exel's motion for summary adjudication of plaintiff's punitive damage claim is DENIED.

IT IS SO ORDERED.