Leslie KOHLER, Plaintiff–Appellant,

v.

**INTER–TEL TECHNOLOGIES,**
Defendant–Appellee.

No. 99–15895.

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 12, 2001

Submission Deferred Feb. 12, 2001

Submitted Feb. 20, 2001

Filed April 11, 2001

Gregg Lowell McCurdy, McCurdy & Ku, Richmond, California, for the plaintiff-appellant.

Marina C. Tsatalis, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, California, for the defendant appellee.

Before: ALARCON, KOZINSKI, and HAWKINS, Circuit Judges.

ALARCON, Circuit Judge:

Leslie Kohler ("Kohler") appeals from the summary judgment entered in favor of defendant Inter–Tel Technologies ("Inter–Tel") dismissing her sexual harassment and retaliation claims under the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900—12996 ("FEHA").

Kohler contends that the district court erred in applying the federal affirmative defense to employer liability to her state sexual harassment claims. She also contends that this court should either (1) direct the district court to dismiss her state claims without prejudice under the supplemental jurisdiction statute, or (2) find that genuine issues of material fact exist as to her FEHA quid pro quo and hostile environment claims.

We affirm because we conclude that the district court did not err in determining that the California Supreme Court will hold that an employer can assert an affirmative defense under certain circumstances to a claim that a supervisor has sexually harassed the plaintiff in violation of FEHA.

## I

Kohler was employed as a project coordinator with Inter–Tel from August 18, 1997, through December 19, 1997. Inter–Tel is a single source provider of telephone, data, and network services. Kohler was responsible for programming telephone systems at customer sites and training customers on how to use the Inter–Tel telephone system. Edward Herrera ("Herrera") supervised Kohler throughout her employment with Inter–Tel. Kohler contends that starting in August 1997 and continuing throughout her four-month employment with Inter–Tel, Herrera subjected her to unwelcome sexual remarks, sexual advances, and physical contact that amounted to actionable sexual harassment.

On one occasion when Kohler and Herrera stopped at a gas station on their way to a work site, Herrera touched her forearm, saying "you don't know how hard it is for me not to grab you." She responded by ignoring him and saying that she had to get back to the site. On another occasion, Herrera and Kohler were loading equipment into Kohler's car. When she bent down over the trunk in front of him, he said, "[d]on't do that in front of me it drives me crazy."

In the office, Herrera once asked Kohler to have a drink with him. She responded "no" and he said "okay." On another occasion, Herrera stared at Kohler's breasts and told her that he couldn't take his eyes off them. Several times Herrera told Kohler that he found her attractive. Also, Herrera once sent Kohler an "alpha-page" telling her that her short skirt would "drive clients crazy." On another day Herrera said "kiss me" in response to Kohler's question whether he was upset with her. Finally, Herrera forwarded an obscene voicemail message to several people in the office, including Kohler. The message depicted someone imitating the voice of Donald Duck making several sexual innuendos and then ejaculating. Generally, when Kohler told Herrera that his behavior made her uncomfortable, his response was to "get quiet" or "laugh it off."

Kohler estimates that she saw Herrera once a week in the office and once a month at installation sites, but says that his offensive conduct was not limited to working hours. Herrera called Kohler at home approximately ten times during August and September of 1997. During these calls he would typically initiate the conversation by discussing work and then talk about being sexually frustrated with his wife. On one occasion, he described his sexual fantasies about Kohler. Another time, Herrera said that if he could get her in a "telephone room," he would kiss her neck and ears. She replied that "it was never going to happen." He responded, "[w]e'll see." During the same conversation he said that women were unable to resist him. Kohler's general reaction to these calls was to tell Herrera that he made her uncomfortable although she admits she may have occasionally laughed and smiled while talking with him. She hung up on Herrera once.

Inter–Tel had a comprehensive antiharassment policy in effect at all relevant times. Despite her knowledge of the policy, Kohler did not report Herrera's behav-

ior to the human resources department, or to any person in a management position at Inter–Tel.

Kohler alleges that the combination of Herrera's retaliatory and harassing behavior made the conditions at Inter–Tel "intolerable." Kohler felt that without proper assistance and training, she was not qualified to do the installation jobs alone. She contends that Herrera thus set her up to fail by withholding training and assistance. This led her to submit resumes to other employers in October and eventually resign from Inter–Tel in December.[1]

■ After her resignation, Kohler filed complaints with the Equal Employment and Opportunity Commission ("EEOC") and California's Fair Employment and Housing Commission ("FEHC").[2] On February 2, 1998, Kohler filed an action against Inter–Tel seeking relief for sexual harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17 ("Title VII"), and FEHA, as well as relief for constructive discharge in violation of public policy. Before the district court rendered its decision in this matter, the United States Supreme Court issued two opinions which clarified employer liability for sexual harassment under Title VII. In *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Court held that an employer is vicariously liable for a supervisor's sexual harassment, whether it falls under the category of quid pro quo or environmental harassment. *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. If no tangible employment action was taken against the employee, however, the employer may raise an affirmative defense to liability by showing that (1) it exercised reasonable care to prevent and correct the harassment; and (2) that the employee unreason-

---

1. Two weeks prior to leaving Inter–Tel Kohler accepted a job with another company.

2. The parties do not dispute that Kohler exhausted her administrative remedies.

ably failed to take advantage of any preventative or corrective opportunities or otherwise failed to avoid harm. *Faragher*, 524 U.S. at 807–08, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

On April 13, 1999, the district court granted Inter–Tel's motion for summary judgment on all of Kohler's claims. The district court held that Kohler had not suffered a tangible employment action as a result of her rejection of Herrera's sexual advances. The district court also concluded that Inter–Tel was entitled to judgment because the undisputed facts demonstrated that it had met both prongs of the affirmative defense to a Title VII claim. The district court further determined that the affirmative defense adopted in *Ellerth* and *Faragher* applied to a workplace harassment claim under FEHA, holding that "there is no reason to assume that California courts would not follow the holdings of *Ellerth* and *Faragher* given that the policy set forth by the California Legislature supporting FEHA is the same as that supporting Title VII."

The district court dismissed Kohler's state law retaliation, discrimination, and constructive discharge claims for failure to demonstrate any triable issues of fact as to the prima facie elements of those claims. Kohler filed a timely notice of appeal. Her appeal is limited to the dismissal of her FEHA claims for sexual harassment and retaliation. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II

■ Kohler first contends that the district court abused its discretion in failing to dismiss her supplemental state law claims without prejudice in view of its dismissal of the Title VII claims.[3] Kohler never moved to dismiss her supplemental claims before the district court after it granted Inter–Tel's motion for summary judgment with respect to her Title VII claims.

The supplemental jurisdiction statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, it is undisputed that Kohler's federal and state law claims form a part of the same case and controversy because they are based on the same nucleus of operative facts. Therefore, the district court had the power to exercise supplemental jurisdiction over Kohler's FEHA claims. *See Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1088 n. 4 (9th Cir.2000) (finding supplemental jurisdiction proper where state claims based on same factual allegations as federal claims).

Kohler does not challenge the district court's jurisdiction over her state law claims, but she contends that it should have declined to exercise its jurisdiction and, instead, it should have dismissed them without prejudice pursuant to section 1367(c)(3). "[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)...." *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir.2000) (en banc). Section 1367(c)(3) provides in pertinent part, "The district courts may decline to

---

**3.** In Kohler's complaint, she asserted federal question jurisdiction under 28 U.S.C. § 1331, over her federal claims, and supplemental jurisdiction under 28 U.S.C. § 1367, over her state claims. As noted above, Kohler appeals only her state claims. In her brief to this court, Kohler asserts diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction. The party seeking to invoke federal jurisdiction has the burden of proving diversi-

ty jurisdiction. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986). At oral argument, Kohler's counsel conceded that Kohler has not carried her burden of pleading and proving diversity jurisdiction. Therefore, the sole basis for federal jurisdiction over Kohler's state claims is supplemental jurisdiction. *See United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir.1986) (attorney's statement during oral argument constitutes judicial admission).

exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction."

Kohler has waived her objection to the district court's discretionary exercise of supplemental jurisdiction by failing to raise it in the district court. "[W]e are not required to step in *sua sponte* on appeal to undo an unchallenged exercise of supplemental jurisdiction." *Acri*, 114 F.3d at 1000. The exercise of supplemental jurisdiction under § 1367(c) is therefore treated differently from Article III jurisdiction, which must be examined even when no party has raised it or even if raised for the first time on appeal. *Doe v. District of Columbia*, 93 F.3d 861, 871 (D.C.Cir.1996) (per curiam) (holding that, in contrast to Article III jurisdiction, review of the discretionary aspect of supplemental jurisdiction under § 1367(c) is waived unless raised in the district court). Review of supplemental jurisdiction thus remains within the purview of "our normal rules of appellate procedure." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998) (en banc). Because Kohler did not raise the issue of supplemental jurisdiction in district court, it may not be raised for the first time on appeal. *See id.* Therefore, we decline Kohler's request that we vacate the judgment dismissing her supplemental claims on the merits.

### III

Kohler next contends that the district court erred in assuming the California courts would apply the affirmative defense to employer liability under Title VII announced in *Ellerth* and *Faragher* to a claim of sexual harassment under FEHA. Specifically, she maintains that the district court erred in dismissing her FEHA claims because an employer is "strictly liable" under FEHA for the harassing conduct of a supervisor. We review the district court's decision to grant summary judgment de novo. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.), *cert. denied*, 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

In reviewing an order granting summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Id.*

The parties have not cited, nor have we discovered, any California decision that addresses this precise question. For example, in *Reno v. Baird*, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998), the Court stated: "we express no opinion on the scope of *employer* liability under the FEHA for either discrimination or harassment." *Id.* at 657, 76 Cal.Rptr.2d 499, 957 P.2d at 1344. In deciding the merits of a claim that involves a novel question of state law, "it is the rule in this circuit that we must try to predict how the highest state court would decide the issue." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1548 (9th Cir.1990); *see Paul v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 819 F.2d 875, 879 (9th Cir.1987) ("Federal courts are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy."); *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 212 (9th Cir.1981) ("[W]e must seek the rule we believe [the California Supreme Court] would adhere to were it confronted with a similar situation."). "In determining what the California Supreme Court would decide, we may consider recognized legal sources such as statutes, treatises, restatements, and published decisions." *Hal Roach Studios*, 896 F.2d at 1548. We may also look to pertinent decisions from other jurisdictions. *Id.*

### A

We begin our discussion of whether the California Supreme Court would recognize an affirmative defense to a workplace harassment claim filed under FEHA by reviewing the present state of sexual

harassment law in California. California Government Code section 12940 defines eleven unlawful employment practices prohibited by FEHA, including sexual discrimination, a violation of subdivision (a), and sexual harassment, a violation of subdivision (j). *Mogilefsky v. Superior Court,* 20 Cal.App.4th 1409, 1411–12, 26 Cal. Rptr.2d 116, 117–18 (1993). California courts have established that "[t]here is some overlapping of prohibited practices in these two sections, as recognized by cases holding that sexual harassment is a form of discrimination." *Id.* at 1413, 26 Cal. Rptr.2d at 118 (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). "The primary distinction between the two [FEHA subdivisions] is that an employee alleging discrimination in violation of subdivision (a) must allege facts demonstrating that he or she was discriminated against 'in compensation or in terms, conditions or privileges of employment' whereas an employee alleging discrimination in violation of subdivision [ (j) ] need not allege loss of tangible job benefits." *Id.* (citation omitted).

California decisions construing FEHA parallel federal case law interpreting Title VII in recognizing "two theories upon which sexual harassment may be alleged. The first is quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances. The second is hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment." *Id.* California's intermediate appellate courts have adopted the federal definition of both types of harassment. *Beyda v. City of Los Angeles,* 65 Cal.App.4th 511, 516–17, 76 Cal.Rptr.2d 547, 550 (1998); *Fisher v. San Pedro Peninsula Hosp.,* 214 Cal.App.3d 590, 607, 262 Cal.Rptr. 842, 851 (1989).

In *Kelly–Zurian v. Wohl Shoe Co.,* 22 Cal.App.4th 397, 27 Cal.Rptr.2d 457 (1994), the court stated that "harassment by a supervisor is unlawful [under FEHA] regardless of whether the employer knows or should have known and fails to inter-

vene." *Id.* at 414–15, 27 Cal.Rptr.2d at 466. FEHA also provides, however, that harassment by a coworker is unlawful only "if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." Cal. Gov't Code § 12940(j)(1).

The California Courts of Appeal have held that subsection (j)(1) of section 12940 imposes liability on employers for damages incurred by an employee as a result of sexual harassment by employees. *E.g., Doe v. Capital Cities,* 50 Cal.App.4th 1038, 1045, 58 Cal.Rptr.2d 122, 127 (1996). The California Courts of Appeal refer to an employer's legal responsibility for the conduct of a supervisor who sexually harasses an employee as "strict liability." *Capital Cities,* 50 Cal.App.4th at 1045, 58 Cal. Rptr.2d at 127 (stating that "the employer is strictly liable for the harassing actions of its supervisors and agents."); *Murillo v. Rite Stuff Foods, Inc.,* 65 Cal.App.4th 833, 841–42, 77 Cal.Rptr.2d 12, 17 (1998) ("An employer is strictly liable for damages an employee incurs as a result of a supervisor's or agent's sexual harassment.").

The California courts consistently look to Title VII for guidance in interpreting FEHA. *See Aguilar v. Avis Rent A Car Sys., Inc.,* 21 Cal.4th 121, 129, 87 Cal. Rptr.2d 132, 980 P.2d 846, 851 (1999) (noting that California courts have adopted the Title VII standard for evaluating environmental workplace harassment claims under FEHA); *Reno,* 18 Cal.4th at 647, 76 Cal.Rptr.2d 499, 957 P.2d at 1337 ("Because the antidiscrimination objectives and relevant wording of [T]itle VII ... are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA.") (citations omitted) (quoting *Janken v. GM Hughes Elecs.,* 46 Cal.App.4th 55, 65, 53 Cal. Rptr.2d 741, 747 (1996)); *accord Brooks v. City of San Mateo,* 229 F.3d 917, 923 (9th Cir.2000) ("While [plaintiff] argues that she was subjected to sexual discrimination

under Title VII as well as FEHA, we need only assess her claim under federal law because Title VII and FEHA operate under the same guiding principles.") *see also Carrisales v. Dep't of Corrections,* 21 Cal.4th 1132, 1139–40, 90 Cal.Rptr.2d 804, 988 P.2d 1083, 1088 (1999) (looking to Title VII to aid in interpretation of FEHA even where Title VII lacks the language at issue in FEHA); *Etter v. Veriflo Corp.,* 67 Cal. App.4th 457, 461–64, 79 Cal.Rptr.2d 33, 35–36 (1998); *Beyda,* 65 Cal.App.4th at 516–17, 76 Cal.Rptr.2d at 550 ("Although the wording of [T]itle VII differs in some particulars from the wording of FEHA, the antidiscriminatory objectives and overriding policy purposes of the two acts are identical. In an area of emerging law, such as employment discrimination, it is appropriate to consider federal cases interpreting [T]itle VII.") (internal citations and quotation omitted); *Fisher,* 214 Cal. App.3d at 605–06, 262 Cal.Rptr. at 850 ("There are no California reported decisions addressing the issue of the requirements necessary to plead a cause of action for sexual harassment based on a hostile work environment. Accordingly, we look to both federal law and decisions of the California Fair Employment Housing Commission ... for guidance.")

The tendency of California courts to look to Title VII law for guidance does not end our inquiry, however, because the California Supreme Court has also observed that it is neither bound nor limited by federal law when interpreting FEHA. *See, e.g., Johnson v. City of Loma Linda,* 24 Cal.4th 61, 73, 99 Cal.Rptr.2d 316, 5 P.3d 874, 882 (2000) ("Only when FEHA provisions are similar to those in Title VII do we look to the federal courts' interpretation of Title VII as an aid in construing the FEHA.") Accordingly, we must compare FEHA and Title VII in order to predict whether the California Supreme Court will hold that the affirmative defense adopted by the United States Supreme Court in *Faragher* and *Ellerth* should apply to cases brought under FEHA.

**B**

We continue our discussion with a comparison of the pertinent provisions of FEHA and Title VII. Both statutes proscribe discrimination by employers because of sex. California Government Code section 12940 provides in pertinent part:

It shall be an unlawful employment practice ... (a) For an employer, because of the ... sex ... of any person ... to discriminate against the person in compensation or in terms, conditions, or privileges of employment ... [and] (j)(1) For an employer ... because of ... sex ... to harass an employee.... Harassment of an employee ... by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. *An entity shall take all reasonable steps to prevent harassment from occurring.* Loss of tangible job benefits shall not be necessary in order to establish harassment.

Cal. Gov't Code §§ 12940(a), (j)(1) (emphasis added).

The parallel section of Title VII provides in relevant part:

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

42 U.S.C. § 2000e–2(a)(1). The obvious difference between the wording of the two statutes is that FEHA is more specific, both in explicitly proscribing harassment and in delineating that employers are required to make efforts to prevent harassment. These discrepancies, particularly the second one, convince us that the language of FEHA provides an even stronger basis for applying the federal affirmative defense than does Title VII itself. The

FEHA requirement that employers "take all reasonable steps to prevent harassment from occurring," § 12940(j)(1), mirrors the first prong of the affirmative defense under which an employer must show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. Because the United States Supreme Court interpreted Title VII to include an affirmative defense for employers in the absence of statutory language referring to preventative measures, the presence of such explicit language in FEHA supports our conclusion that the affirmative defense is compatible with the FEHA scheme.[4]

In addition, FEHA defines "employer" to include "any person acting as an agent of an employer, directly or indirectly." Cal. Gov't Code § 12940(j)(4)(A). In *Ellerth*, the Court noted that "the term 'employer' is defined under Title VII to include 'agents.'" 524 U.S. at 754, 118 S.Ct. 2257 (citing 42 U.S.C. § 2000e(b) and *Meritor*, 477 U.S. at 72, 106 S.Ct. 2399). From this language, the Court determined, "[i]n express terms, Congress has directed federal courts to interpret Title VII based on agency principles." *Id.* Because the definitions of "employer" are identical under FEHA and Title VII, we reach the same conclusion here. Thus, the agency analysis undertaken by the Supreme Court in *Ellerth* applies with equal force under FEHA.

In *Ellerth*, the Court considered general common law principles of agency law in interpreting Title VII, and noted that "we are bound by our holding in *Meritor* that agency principles constrain the imposition of vicarious liability in cases of supervisory harassment." *Id.* at 763, 118 S.Ct. 2257 (citing *Meritor*, 477 U.S. at 72, 106 S.Ct. 2399). The Court determined that the "agency relation rule" is the appropriate form of analysis in cases where a supervisor allegedly misused his actual authority.

*Id.* at 759–60, 106 S.Ct. 2399. The Court concluded that "[w]hatever the exact contours of the aided in the agency relation standard, its requirements will always be met when a supervisor takes a tangible employment action against a subordinate." *Id.* at 762–63, 106 S.Ct. 2399. The Court held that an employer is liable under Title VII for the actions of a supervisor who sexually harasses an employee and thereafter subjects the plaintiff to a tangible employment action. *Id.* at 765, 106 S.Ct. 2399. The employer is liable under these circumstances because the economic harm suffered by the employee "could not have been inflicted absent the agency relation." *Id.* at 761–62, 106 S.Ct. 2399. "[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." *Id.* at 762, 106 S.Ct. 2399. Agency principles thus formed part of the basis for the Court's distinction between employer liability for harassment that culminates in a tangible employment action and that which does not. *Id.* at 762–64, 106 S.Ct. 2399. Absent any contrary indication from applicable California law, these principles dictate the same result under FEHA.

The *Ellerth* Court noted, however, that "[w]hether the agency relation aids in commission of supervisor harassment which does not culminate in a tangible employment action is less obvious." *Id.* at 763, 118 S.Ct. 2257. Further, the Court stated "we hesitate to render a definitive explanation of our understanding of the [aided in agency relation] standard in an area where other important considerations must affect our judgment." *Id.* The Court then moved from its analysis of agency law to an analysis of the policy concerns underlying Title VII.

Accordingly, we next examine the policy goals underlying FEHA and conclude that they favor imposition of the affirmative defense. The legislative note to FEHA provides:

4. Notably, California courts have determined that the "reasonable steps" language is only a basis for liability if the plaintiff proves that actual discrimination or harassment occurred. *Trujillo v. N. County Transit Dist.*, 63 Cal.App.4th 280, 287–89, 73 Cal.Rptr.2d 596, 601–02 (1998). Thus, this provision is not an independent basis for liability under FEHA.

It is the existing policy of the State of California, as declared by the Legislature, that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination by their agents, administrators, and supervisors as well as by their nonsupervisors and clientele. To further this intent, the Legislature enacts this act.

Stats.1984, ch. 1754, § 1, p. 60; *see also Murillo*, 77 Cal.Rptr.2d at 17 (noting that deterrence is one object of antidiscrimination statutes including Title VII and FEHA).

In *Ellerth*, the Court stated that "[a]lthough *Meritor* suggested the limitation on employer liability stemmed from agency principles, the Court acknowledged other considerations might be relevant as well." *Ellerth*, 524 U.S. at 764, 118 S.Ct.

2257. The Supreme Court emphasized that:

> Title VII is designed to encourage the creation of antiharassment policies and effective grievance mechanisms. Were employer liability to depend in part on an employer's effort to create such procedures, it would effect Congress' intention to promote conciliation rather than litigation in the Title VII context, and the EEOC's policy of encouraging the development of grievance procedures. To the extent limiting employer liability could encourage employees to report harassing conduct before it becomes severe or pervasive, it would also serve Title VII's deterrent purpose.

*Id.* (citations omitted). Consequently, the Court adopted the affirmative defense "[i]n order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees." *Id.* The *Ellerth* analysis persuades us that FEHA's identical policy goals support imposition of the affirmative defense to FEHA under the conditions set forth in *Ellerth*.[5]

**5.** We note also that the majority of states that have addressed the question whether the affirmative defense applies to their antidiscrimination laws have adopted it. *Boudreaux v. Louisiana Casino Cruises, Inc.*, 762 So.2d 1200, 1204–05 (La.Ct.App.2000) (stating that state statute should be construed in conformity with Title VII and evaluating application of affirmative defense under both statutes); *Bartkowiak v. Quantum Chem. Corp.*, 35 S.W.3d 103, 108–109 (Tex.App.2000) (same); *Sangster v. Albertson's, Inc.*, 99 Wash.App. 156, 991 P.2d 674, 679–80 (2000) (same); *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 729 N.E.2d 813, 818 (1999) (same); *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170, 176 (Tenn.1999) (holding that federal affirmative defense conforms with state statutory scheme). *But see Chambers v. Trettco, Inc.*, 463 Mich. 297, 614 N.W.2d 910, 922 (2000); *Pollock v. Wetterau Food Distrib. Group*, 11 S.W.3d 754, 767–68 (Mo.Ct.App. 1999); *Webb v. Lustig*, 298 Ill.App.3d 695, 233 Ill.Dec. 119, 700 N.E.2d 220, 227 (1998). In addition, a number of federal courts have determined that the affirmative defense applies to various state antidiscrimination statutes. *See Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999) (applying affirmative defense to Missouri antidiscrimination statute); *Lidwell v. University Park Nursing Care Ctr.*, 116 F.Supp.2d 571, 581 (M.D.Pa.2000); *Childress v. Petsmart, Inc.*, 104 F.Supp.2d 705, 709 (W.D.Tex.2000); *Sedotto v. Borg–Warner Protective Servs. Corp.*, 94 F.Supp.2d 251, 268 (D.Conn.2000); *Henderson v. Heartland Press, Inc.*, 65 F.Supp.2d 991, 998 n. 8 (N.D.Iowa 1999). *But see Newsome v. Admin. Office of the Courts of NJ*, 103 F.Supp.2d 807, 821 (D.N.J. 2000); *Myrick v. GTE Main St. Inc.*, 73 F.Supp.2d 94, 98 (D.Mass.1999); *Grozdanich v. Leisure Hills Health Ctr., Inc.*, 25 F.Supp.2d 953, 975 (D.Minn.1998). While the antidiscrimination laws of other states may differ from FEHA in some particulars, that a significant number of jurisdictions have incorporated the federal affirmative defense into their state schemes strengthens our conclusion that the California Supreme Court will read FEHA in conformity with Title VII.

In sum, the plain statutory language and the policies underlying FEHA support the application of the federal affirmative defense to cases of supervisory harassment arising under FEHA where no tangible employment action was taken. Thus, there is no reason for us to believe that the California Supreme Court would deviate in this instance from its usual practice of construing FEHA in conformity with Title VII. *Cf. Fisher,* 214 Cal.App.3d at 605–06, 262 Cal.Rptr. at 850 (noting that California courts will not look to Title VII "where [T]itle VII precedent does not appear sound, or conflicts with the essential purposes of FEHA").

## C

Kohler contends that an affirmative defense is not available under FEHA because the California Courts of Appeal have consistently used the term "strict liability" in referring to an employer's legal responsibility for a supervisor's sexual harassment of an employee. None of the cases Kohler cites for this proposition considers the question whether the affirmative defense adopted in *Ellerth* and *Faragher* is applicable under FEHA. Kohler, however, relies on these decisions to make two distinct contentions regarding strict liability. First, she asserts that FEHA's strict liability regime is incompatible with Title VII's vicarious liability scheme. Second, she argues that, as a general matter, affirmative defenses are unavailable where strict liability is applicable. We reject both arguments in turn.

Kohler's reliance on the California courts' use of the term "strict liability" or "strictly liable" in distinguishing an employer's responsibility under FEHA for the actions of an agent or supervisor from an employer's responsibility under Title VII is misplaced. California courts have extrapolated the "strict liability" concept from the provision in FEHA which states, "harassment of an employee ... by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of the conduct and fails to

take immediate and appropriate corrective action." § 12940(j)(1). For example, in *Kelly–Zurian,* the California Court of Appeal for the Second District Division Three reasoned as follows:

> By providing harassment of an employee by an employee *other than an agent or supervisor* shall be unlawful *only* if the employer knows or should have known of the harassment and fails to intervene, section 12940 reflects that harassment by a supervisor is unlawful regardless of whether the employer knows or should have known and fails to intervene.

22 Cal.App.4th at 415, 27 Cal.Rptr.2d at 466. The court then stated:

> *Fisher* properly acknowledged this distinction in the FEHA between agents and supervisors and other employees. *Fisher* observed: "Under [the] FEHA, *an employer is 'strictly liable for the harassing conduct of its agents and supervisors.'* " On the other hand, "[t]he standard for *coworker liability* is that an employer is liable where it, its agent or supervisors 'knows or should have known of this conduct and fails to take immediate and appropriate corrective action.' "

*Id.* (citations omitted).

Title VII does not, on its face, distinguish between an employer's liability for harassment of an employee by a supervisor or a coworker. Under the law of this circuit, an employer is liable under Title VII for a coworker's sexual harassment. In *Yamaguchi v. U.S. Dep't of the Air Force,* 109 F.3d 1475 (9th Cir.1997), we summarized our construction of Title VII as follows:

> An employer is liable for a co-worker's sexual harassment only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. These measures must include immediate and corrective action reasonably calculated 1) to end the current harassment, and 2) to deter future harassment from the same offender or others.

*Id.* at 1483. Thus, both FEHA and Title VII limit an employer's liability for a co-worker's harassment in the same manner. Under FEHA and Title VII, however, an employee can recover against an employer without showing that the employer had actual or constructive knowledge of the supervisor's actions or acted negligently in failing to intervene. *Kelly–Zurian,* 22 Cal. App.4th at 414–15, 27 Cal.Rptr.2d at 466; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. Under FEHA and Title VII, a plaintiff need not prove that his or her employer committed an act of sexual harassment or had actual or constructive knowledge that a supervisor had done so. A plaintiff may satisfy the elements of a cause of action under FEHA or Title VII by presenting evidence that persuades the trier of fact by a preponderance of the evidence that an agent or supervisor of the employer committed sexual harassment. This evidence is sufficient to overcome a negative defense that the employer did not have actual or constructive knowledge or actively participate in any way in the tortious conduct. Thus, regardless of the terminology used, the effect of the FEHA and Title VII schemes are the same: an employer is vicariously liable for the acts of an agent or supervisor without regard to the employer's knowledge or fault.

Under each statute, a plaintiff may present a prima facie case of an employer's liability for a supervisor's sexual harassment without demonstrating that the employer was otherwise at fault. The only distinction is that the United States Supreme Court refers to this form of respondeat superior as "vicarious liability" and California's intermediate appellate courts call it "strict liability."

▪ The confusion may lie in courts' tendency to interchange the terms "vicarious liability" and "strict liability" in the employment context. Liability of employers to third parties for acts of its employees is commonly referred to as "vicarious liability." *See* Black's Law Dictionary 927 (7th ed.1999) (defining "vicarious liability" as "[l]iability that a supervisory party (such as an employer) bears for the action-

able conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties.") The term "strict liability" is ordinarily applied to ultra hazardous activities or products-liability cases. It is also referred to as "liability without fault." *Id.* at 926. Under this theory, a plaintiff may prevail without presenting any evidence that the owner of land where the ultra hazardous activities are conducted, or the manufacturer of the defective product, acted negligently or intended to do harm. *Id.* To prevail in a FEHA or Title VII action, the plaintiff must show that an agent or supervisor committed acts constituting sexual harassment. The employer is thus vicariously liable for the acts of the agent or supervisor. *See Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.")

In *Ellerth,* the Court granted certiorari to address the following question:

> [W]hether, under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.,* an employee who refuses the unwelcome and threatening advances of a supervisor, yet suffers no adverse, tangible job consequences, can recover against the employer without showing the employer is negligent or otherwise at fault for the supervisor's actions.

*Id.* at 746–47, 118 S.Ct. 2257. The Court commented that "[e]very Federal Court of Appeals to have considered the question has found *vicarious liability* when a discriminating act results in a tangible employment action." *Id.* at 760, 118 S.Ct. 2257 (emphasis added). The Court cited *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993), in support of this statement. In *Sauers,* the Tenth Circuit stated: " 'If the plaintiff can show that she suffered an economic injury from her supervisor's actions, the employer becomes

*strictly* liable without any further showing. . . ." *Id.* at 1127 (emphasis added) (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992)). Thus, it would appear that in construing an employer's liability under Title VII, the United States Supreme Court treats the terms "vicarious liability" and "strict liability" as synonymous.

Similarly, federal courts occasionally characterize Title VII as imposing "strict liability" on employers, subject to an affirmative defense available in cases in which no tangible employment action occurred. *See Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 293–94 (2nd Cir.1999) (stating that "[plaintiff] argues that even if her constructive discharge is not a tangible employment action, [defendant] cannot satisfy the standard articulated by the Court in *Ellerth* and *Faragher* for an employer's affirmative defense to strict liability under Title VII"); *Shaw v. AutoZone*, 180 F.3d 806, 810 (7th Cir.1999) (characterizing *Ellerth* as holding "that employers are strictly liable for a supervisor's sexual harassment of a subordinate, but that employers may avoid that liability by proving an affirmative defense"); *Hasbrouck v. Bankamerica Housing Services, Inc.*, 105 F.Supp.2d 31, 35 (N.D.N.Y.2000) ("The employer's strict liability for the acts of its supervisor may be avoided, however, in cases where the supervisor's harassment did not result in a tangible employment action taken against the plaintiff-employee."); *Gordon v. Southern Bells, Inc.*, 67 F.Supp.2d 966, 981 (S.D.Ind.1999) ("As the

Court noted in *Ellerth,* employers are strictly liable for supervisor harassment that does not lead to a tangible employment action.").

In sum, the California courts that state an employer is "strictly liable" for supervisory harassment use that term to indicate that an employer is liable for the conduct of his agent. The mere fact the California courts use a "strict liability" label rather than a "vicarious liability" label for the same theory of liability does not persuade us that the California Supreme Court would decline to adopt an affirmative defense to a FEHA workplace harassment action.

Kohler also maintains, as a general matter, that affirmative defenses are fundamentally incompatible with strict liability. This notion is contrary to California law. In *Luque v. McLean,* 8 Cal.3d 136, 104 Cal.Rptr. 443, 501 P.2d 1163 (1972), the California Supreme Court held that the affirmative defense of assumption of risk is available to bar recovery in a strict liability action. *Id.* at 145, 104 Cal.Rptr. 443, 501 P.2d 1163.[6] Accordingly, the strict liability terminology used by California courts in actions against an employer under FEHA does not bar application of the *Ellerth* affirmative defense.[7]

## IV

We now apply the affirmative defense to the facts of this case. We must first determine whether Kohler suffered a tangible employment action, because "[n]o affir-

---

6. In addition, the Second Restatement provides examples of several affirmative defenses that may be available under strict liability regimes, such as "assumption of risk" and "contributory negligence." Restatement (Second) of Torts §§ 523, 524 (1977).

7. We are also unpersuaded by Kohler's argument that applying the affirmative defense to actions brought under FEHA will eviscerate the provision that "[l]oss of tangible job benefits shall not be necessary in order to establish harassment." Cal. Gov't Code § 12940(j)(1). Kohler simply misconstrues the holdings of *Ellerth* and *Faragher.* Under Title VII, it is well settled that the loss of tangible job bene-

fits is not required to establish actionable harassment. *Faragher,* 524 U.S. at 786, 118 S.Ct. 2275 ("We have repeatedly made clear that although the statute mentions specific employment decisions with immediate consequences, the scope of the prohibition 'is not limited to "economic" or "tangible" discrimination.' " (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993))). The presence or absence of tangible employment actions is only relevant to determining whether an employer may invoke the affirmative defense to shield itself from liability, not to whether a plaintiff has shown actionable discrimination.

mative defense is available ... when [a] supervisor's harassment culminates in a tangible employment action." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. 2257. Further, a "tangible employment action in most cases inflicts direct economic harm." *Id.* at 762, 118 S.Ct. 2257. "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *Id.*

Kohler claims that she suffered a tangible employment action because, after she rejected Herrera's advances, he acted angrily toward her, withheld training and assistance, gave her inconvenient work schedules and a poor work performance review.[8] It is questionable whether any of these alleged employment actions qualify as "tangible" as none of them appears to have caused a "significant change in employment status." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257. In any event, Kohler's claim fails because she has not demonstrated disputed facts showing that her rejection of Herrera's advances caused any of the employment actions she claims to have suffered.

Kohler complains that she was denied the opportunity to attend a training session in Arizona. She admits, however that Herrera registered her for the session in Arizona. The class was later canceled, and

Kohler has not alleged that Herrera had anything to do with the cancellation. Kohler also asserts that she did not receive enough assistance at installation sites, and yet she offers no specific facts to support her contention that this was a form of retaliation by Herrera. In fact, Kohler stated that she did not know why another employee received more assistance from the other coordinators.

Kohler similarly fails to support her claims that Herrera gave her "crazy schedules" in retaliation for her refusal to succumb to his advances. Kohler complains that Herrera sent her to inconvenient job locations at least once, but admits that "it was just part of the job being all over. As I said before, East, North Bay, South Bay." She also admits that, initially, she simply accompanied other project coordinators to their sites so that they could train her.

Finally, Kohler fails to raise disputed facts regarding whether Herrera yelled at her inappropriately or gave her undeserved work evaluations. Herrera acted angrily toward Kohler when she performed poorly and when she did not want to work past 5:00 p.m. She also heard Herrera speak angrily to male technicians and other female coordinators when things were not going smoothly. Kohler described a particular incident where she and a coworker had incorrectly programmed 200 single-line phones. Herrera was upset by her admittedly poor performance.

The legally relevant inquiry is not whether Kohler ever experienced an employment action at Inter–Tel, but whether Herrera's harassment culminated in a tangible employment action. *Ellerth*, 524

---

8. In the district court, Kohler also claimed that she was constructively discharged. We have not yet determined whether a constructive discharge is a tangible employment action. *Montero v. Agco Corp.*, 192 F.3d 856, 861 (9th Cir.1999) (declining to reach the issue). Other circuits disagree on this question. *Compare Caridad*, 191 F.3d at 294 (holding constructive discharge not a tangible employment action), *cert. denied*, 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000), *with Durham Life Ins. Co. v. Evans*, 166 F.3d 139 (3d Cir.1999) (holding that constructive discharge is tangible employment action on facts of case). We do not reach this issue in this case because Kohler has waived her constructive discharge claim by failing to state her "contentions and the reasons for them, with citations to the authorities and parts of the record on which [she] relies" in her brief to this court. Fed. R.App. P. 28(a)(9); *Acosta–Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir.1993).

U.S. at 765, 118 S.Ct. 2257. Kohler cannot connect any of the alleged employment actions she experienced to her rejection of Herrera's advances. Therefore, Kohler has failed to demonstrate a disputed factual issue as to whether she suffered a tangible employment action.

■ When no tangible employment action is taken, a defending employer may "raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence[.]" *Id.* In the present case, the undisputed facts make clear that Inter–Tel has satisfied the affirmative defense as a matter of law.[9] The first prong of the defense requires Inter–Tel to show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. "While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Id.*

Inter–Tel's policy (1) provides a definition of sexual harassment, (2) identifies whom employees should contact if they are subjected to sexual harassment, (3) ensures that harassing supervisors can be bypassed in registering complaints, (4) describes the disciplinary measures that the company may use in a harassment case, and (5) provides a statement that retaliation will not be tolerated.[10] Inter–Tel distributed the policy to its employees on their first day of work. Kohler acknowledged having received and read a copy of the policy and the employee handbook, which contains a separate statement summarizing the policy.[11] Inter–Tel's policy and its efforts to disseminate the policy to its employees establish that Inter–Tel exercised reasonable care to prevent sexual harassment in the workplace. *Montero,* 192 F.3d at 862.

9. In her brief to this court, Kohler states: "At least two things are clear. First, Plaintiff/Appellant does not have a cause of action under Title VII for sexual harassment because the defendant employer had both a sexual harassment policy and complaint procedure in place, and because Plaintiff/Appellant did not make use of it." Although we have the discretion to consider this statement a judicial admission of the party, *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 227 (9th Cir. 1988), we choose instead to proceed with an analysis of the elements of the affirmative defense.

10. Inter–Tel's antiharassment policy provides, inter alia:

**Sexual Harassment**
Inter–Tel believes that all personnel should work in an environment free from sexual harassment. Sexual harassment by an employee, manager, supervisor, or non-employee will not be tolerated. Inter–Tel will actively investigate any allegation of sexual harassment, and if it is determined that sexual harassment has occurred, Inter–Tel will take appropriate disciplinary action.
**Complaint Procedures**
Any employee who believes he or she has been the subject of sex discrimination or sexual harassment should report the alleged act immediately to his or her supervisor or to the branch or Corporate Human Resources Department. An investigation of all complaints will be undertaken immediately. Any employee who has been found by Inter–Tel, after appropriate investigation, to have violated this policy will be subject to appropriate disciplinary action, depending on the seriousness of the offense, from a verbal warning up to and including termination. The complainant will be informed of all such remedial action.
**General**
All employees shall be protected from coercion, intimidation, retaliation, interference, or discrimination for filing a complaint or assisting in the investigation of a sexual harassment complaint.

11. The employee handbook reiterates the admonition against sexual harassment as well as Inter–Tel's complaint procedures, providing in pertinent part:

Inter–Tel does not condone discrimination or harassment of any sort on the job. If you feel discriminated against or harassed because of ... sex ... discuss it with your supervisor or contact the Human Resources Department. If the complaint involves your supervisor, the complaint should be filed directly with the Human Resources Department. An investigation of all complaints will be undertaken immediately.

The first prong of the affirmative defense also requires Inter–Tel to demonstrate that it exercised reasonable care to promptly correct sexually harassing behavior. The undisputed facts of this case establish that Inter–Tel was exemplary in its investigation of Kohler's allegations. The first notice Inter–Tel received of Kohler's sexual harassment allegations was from the EEOC. Inter–Tel responded by promptly hiring a neutral third party to investigate Kohler's allegations. In addition, Inter–Tel immediately wrote to Kohler and extended an offer for her to return to her position at Inter–Tel, with a new supervisor and under the same terms and conditions as her original employment. Finally, Inter–Tel offered Kohler back pay from the time of her resignation through her reinstatement. Kohler did not respond to Inter–Tel's offers.

The independent investigator, who was an employment law attorney, repeatedly sought Kohler's participation in the investigation. Kohler never responded to these attempts because she "did not want to participate in the investigation." The investigator interviewed six Inter–Tel employees, including Herrera and all but one of the other Project Coordinators who reported to him. The investigator determined that Herrera had forwarded an offensive Donald Duck voicemail message to a number of employees. Ultimately, however, the investigator did not confirm Kohler's claim that she had been harassed. Inter–Tel wrote a letter to Kohler, informing her of the outcome of the investigation. Kohler never responded.

After the investigation was complete, Inter–Tel reviewed its antiharassment policy with Herrera on two occasions even though no actionable harassment had been confirmed. In addition, Inter–Tel reprimanded Herrera and threatened to deny

his eligibility for a "supervisor" position for sending the offensive voicemail message.[12] Inter–Tel also conducted mandatory sexual harassment training seminars for the entire Emeryville work force on May 1, 1998, and again on May 27 and 28, 1998.

Inter–Tel could hardly have done more to investigate Kohler's allegations in a prompt and neutral manner. These facts present a paradigm of the "reasonable efforts" the Supreme Court sought to encourage when it established the affirmative defense. *Faragher,* 524 U.S. at 806, 118 S.Ct. 2275. Inter–Tel clearly satisfied the first element of the affirmative defense.

■ The second prong of the affirmative defense requires "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.*

The record shows that Kohler was aware of the policy and had received and reviewed at least two copies of it. She also knew Herrera's supervisor and the human resources personnel at Inter–Tel and believed them to be professional and competent. Nonetheless, Kohler did not complain about Herrera's behavior to the management or the human resources department at Inter–Tel. Prior to initiating this lawsuit, Kohler never told anyone that she was quitting because of sexual harassment, nor did she attribute her resignation to Herrera's behavior.[13] Therefore, Inter–

---

**12.** Herrera could be denied a "supervisor" position because he was technically an installation "manager" and not a "supervisor" by title. The parties do not dispute, however, that Herrera supervised Kohler throughout her employment with Inter–Tel.

**13.** Kohler's resignation letter states simply that "as of December 19, 1997 I am resigning from my position as a Project Coordinator. Thank you for this opportunity to serve you."

Tel successfully satisfied the second prong of the affirmative defense as a matter of law by showing that Kohler unreasonably failed to take advantage of the preventative and corrective opportunities provided by Inter–Tel, although she knew of their existence. *Montero,* 192 F.3d at 863–64.

## V

In her statement of issues presented by this appeal, Kohler asserts that she is appealing her state retaliation claim, but her brief contains no arguments in support of that claim. Rule 28(a)(9) of the Federal Rules of Appellate Procedure requires that the brief of an appellant contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Issues raised in a brief which are not supported by argument are deemed abandoned. *Acosta–Huerta,* 7 F.3d at 144. "We will only review an issue not properly presented if our failure to do so would result in manifest injustice." *Id.* (quoting *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir.1988)).

Kohler has not preserved her retaliation claim for appeal and we decline to review it. *Greenwood v. FAA,* 28 F.3d 971, 977 (9th Cir.1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.").

### CONCLUSION

In sum, we hold that the California courts will most likely adopt the affirmative defense to employer liability for workplace harassment set forth in *Ellerth* and *Faragher.* Because Kohler suffered no tangible employment action and Inter–Tel has satisfied both prongs of the affirmative defense, the district court's summary judgment in favor of Inter–Tel is AFFIRMED.