Gaye NEWSOME, Appellant,

v.

ADMINISTRATIVE OFFICE OF THE COURTS OF THE STATE OF NEW JERSEY; William Coleman, Jr.; Robert E. Battle; Phillip Hill, Individually and as employees of Administrative Office of the Courts, State of New Jersey.

No. 00–4327.

United States Court of Appeals, Third Circuit.

Submitted May 28, 2002.

Decided Oct. 4, 2002.

Before NYGAARD, McKEE, and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

Gaye Newsome appeals *pro se* from the District Court's entry of judgment for the defendants on her claims of discrimination in employment. For the reasons that follow we will affirm.

## I.

Because the facts are set forth in detail in the District Court's July 6, 2000, Amended Opinion, *see* App., Exh. C at 2–10, which was also published at *Newsome v. Administrative Office of the Courts of NJ*, 103 F.Supp.2d. 807 (D.N.J.2000), we need only summarize the pertinent background here. Newsome is employed as a Community Development Specialist in the Juvenile Intensive Supervision Program with New Jersey's Administrative Office of the Courts (AOC). Beginning with her interview for that position in 1993, and continuing until sometime in 1995, Newsome claims that she was subjected to numerous instances of sexual harassment by her immediate supervisor, William Coleman. On November 15, 1995, Newsome first informed Phillip J. Hill, Coleman's supervisor, that she wished to file a formal complaint against Coleman. The next day, November 16, a new supervisor was assigned to Newsome. Newsome's position and terms of employment otherwise remained unchanged. On November 28, 1995, Newsome filed a formal EEO complaint against Coleman.

After interviewing several AOC employees about the allegations against Coleman, Robert E. Battle, the EEO investigator, issued a report concluding that Newsome's allegations were "unsubstantiated." Supp. App. at 39a. Newsome then filed a complaint with the United States Equal Employment Opportunity Commission, which determined, after its own investigation,

that "[c]redible witness testimony supports [Newsome's] allegations of sexual harassment," and that "there is reasonable cause to believe that [AOC] discriminated against [Newsome] because of her sex (female) in violation of Title VII. . . ." App., Exh. D at 3. The EEOC issued a right-to-sue letter, and Newsome commenced this action in the United States District Court for the District of New Jersey, asserting in her counseled complaint claims against the AOC, Coleman, Hill, and Battle under Title VII and New Jersey's Law Against Discrimination (LAD), and also a state-law claim against Coleman for intentional infliction of emotional distress.

By Order entered June 30, 2000, the District Court granted the defendants' motions for summary judgment on the Title VII claim, granted summary judgment to Coleman, Hill, and Battle on the LAD claims, denied summary judgment to the AOC on the LAD claim, and denied summary judgment to Coleman on the intentional infliction of emotional distress claim. Thereafter, the AOC moved for summary judgment on the LAD claim on the ground of Eleventh Amendment immunity, and the District Court granted that motion by Order entered November 14, 2000. Newsome filed her notice of appeal on December 13, 2000. Several months later, on June 22, 2001, the District Court entered summary judgment for Coleman on the intention infliction of emotional distress claim.

## II.

### A. *Appellate Jurisdiction*

The AOC argues that we should decline to exercise appellate jurisdiction. It notes that an appealable final judgment under 28 U.S.C. § 1291 was not entered until June 22, 2001, when the District Court entered summary judgment for Coleman on the remaining state-law claim. Thus, the AOC

contends, this appeal was prematurely taken from a non-final order, and it argues that "appellant has failed to bring before the court defendant William Coleman, the alleged harasser." Appellee's Br. at 1. Because Newsome has purportedly "failed to join in this appeal all interested parties," the AOC argues that "this court should decline to exercise jurisdiction over the matter and dismiss the appeal." *Id.* at 2. We reject this argument.

As the AOC acknowledges, it is well-settled in this Circuit that "an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party." *Richerson v. Jones,* 551 F.2d 918, 922 (3d Cir.1977). In *Cape May Greene, Inc. v. Warren,* 698 F.2d 179 (3d Cir.1983), the defendants filed a cross-claim that was not actually litigated either before or after entry of the order from which the appeal was taken, but when the District Court dismissed the cross-claim after the notice of appeal was filed, we held that appellate jurisdiction existed, as the appellee would suffer no prejudice and this Court had yet to take "any action on the merits." *Id.* at 184. In such a case, the premature notice of appeal can be deemed effective as of the date of entry of the final order. *Id.* at 185.

The AOC seems to suggest that it has been prejudiced by Newsome's failure to join Coleman in the appeal, but we fail to see any prejudice. The briefing notice was issued well after the District Court's June 21, 2001, final judgment was entered; the AOC had ample notice that Newsome would raise at least the Title VII claim on appeal; and no action had been taken on the merits at the time the final judgment was entered. Moreover, the AOC simply offers no persuasive reason for declining

jurisdiction under the *Cape May Greene* analysis merely because all parties to the action in the District Court have not appeared before this Court. Thus, we conclude that it is appropriate to exercise jurisdiction pursuant to § 1291.

## B. *Title VII claim*

The District Court entered summary judgment in favor of the AOC on Newsome's Title VII claim.[1] Our review is plenary, and as the District Court fully explained, summary judgment is appropriately entered only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

 The District Court determined that Newsome "set forth substantial evidence of repeated unwelcome sexual advances by Coleman" and found that she made a *prima facie* case of a hostile work environment. App., Exh. C at 15. The District Court concluded, however, that summary judgment was warranted based on the affirmative defense to liability recognized in *Burlington Indus. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *Ellerth* and *Faragher* hold that an employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate authority over the employee, but if no tangible employment action was taken against the employee, the employer may raise an affirmative defense to liability by showing (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) "that the

plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765; *Faragher,* 524 U.S. at 807.

The District Court found no material factual dispute that Newsome did not suffer a tangible adverse employment action. The District Court further found no dispute that the AOC exercised reasonable care to prevent and promptly correct the effects of Coleman's harassment, and that Newsome's failure "to lodge a complaint—either formally or informally—was eminently unreasonable." App., Exh. C at 21. After a careful review of the summary judgment record, we fully agree with the District Court's analysis.

Newsome contends on appeal that she suffered an adverse employment action "because my employer[ ] did not take responsibility for the harassment" and because "of how all of this has affected me mentally, physically, and emotionally." Reply Br. at 14. The Supreme Court has defined a tangible adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 749. The evidence of record is undisputed that Newsome did not suffer a "tangible adverse employment action" as defined by the Supreme Court. As such, the District Court correctly permitted the AOC to assert an *Ellerth/Faragher* defense.

The Supreme Court offered the following observation in *Ellerth* as to the evi-

---

1. Insofar as Newsome seeks to appeal the entry of summary judgment on her Title VII claims against Coleman, Battle, and Hill, it is settled that Title VII does not provide for individual liability. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996) (en banc). Accordingly, judgment was properly entered for those defendants.

dence that will suffice to establish the two prongs of the affirmative defense:

> While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Ellerth,* 524 U.S. at 765.

■ Here, the District Court concluded, as a matter of law, that the AOC satisfied the first prong of the defense, explaining as follows:

> [B]y implementing and disseminating a comprehensive anti-harassment policy with specific complaint procedures and, significantly, a mechanism for the bypass of an immediate supervisor, by conducting training sessions, and by acting immediately upon learning of Newsome's concerns to prevent any further harassment by Coleman, the AOC acted

reasonably and satisfied the first element of the affirmative defense.

App., Exh. C. at 20–21.

Newsome's primary contention on appeal is that the AOC's procedure for investigating complaints was flawed, as evidenced by Battle's determination that her claims were "unsubstantiated," whereas the EEOC, upon its own investigation, found substantial evidence that Coleman harassed Newsome. Informal Br. at 6. While it is true that the EEOC investigator and Battle reached different conclusions, the record is nevertheless undisputed that the AOC exercised reasonable care. To defeat the AOC's summary judgment motion, Newsome had to show that there is evidence from which a reasonable jury could conclude that the AOC did not "exercise reasonable care to prevent and correct promptly any sexually harassing behavior." *Ellerth,* 524 U.S. at 765. Like the District Court, we fail to see any such evidence in the record, and thus the AOC was entitled to summary judgment on the first prong of its defense.[2]

■ As to the second prong, the District Court noted that Coleman's harassment allegedly began in the fall of 1993, but that Newsome failed to lodge a complaint until November 15, 1995–a delay which the District Court found "eminently unreasonable." App., Exh. C. at 21. We agree that Newsome's two-year delay was unreasonable as a matter of law, and thus the AOC

---

**2.** Newsome contends that AOC employees were not given sexual harassment training until October 1995, which was just one month before she lodged her formal complaint; she seems to argue that the failure to provide formal training sooner explains why she did not resort to the AOC's formal complaint process sooner. Informal Br. at 6. The record reflects, however, that Newsome was issued the AOC's anti-harassment policy upon her hire in 1993, and she was also issued the AOC's revised policy in January 1995. App.,

Exh. C at 19. Both the original policy and the amended policy stated a procedure for lodging a complaint with someone in authority other than the allegedly harassing supervisor. Further, sexual harassment awareness training sessions were held regularly, and the October 1995 session Newsome refers to was clearly an additional, "special session" held in response to a complaint lodged by another employee. Thus, Newsome's suggestion that there was inadequate harassment training finds no support in the record.

was entitled to summary judgment on the second prong of its defense. *See Gawley v. Indiana Univ.*, 276 F.3d 301, 312 (7th Cir.2001) (affirming summary judgment for employer because "Gawley's neglect of the university's formal procedures during seven months of escalating harassment, in combination with the insufficiency of her repeated informal efforts to stop Minger constitute an unreasonable failure to take advantage of the university's corrective procedures."); *Jackson v. Arkansas Dep't of Educ.*, 272 F.3d 1020, 1026 (8th Cir. 2001) (same, where employee failed to report harassment for more than nine months).

We note that our recent decision in *Cardenas v. Massey*, 269 F.3d 251 (3d Cir.2001)—which was issued more than a year after the District Court rendered its judgment here is not to the contrary. In *Cardenas,* a case which also involved allegations of a hostile work environment brought by an employee of the AOC, this Court determined that whether the employee, Cardenas, acted reasonably in failing to report the alleged harassment was a question of fact for a jury because Cardenas had complained informally to the supervisors who allegedly harassed him, he had complained to the AOC's Director (Lipscher), and he had complained to the EEO Officer (Battle) prior to filing a formal complaint some four years after the alleged harassment began. Battle refused to address Cardenas's concerns until Cardenas filed a formal complaint. In those circumstances, Cardenas's reluctance to file a formal complaint for fear of aggravating the situation or branding himself a troublemaker were arguably not unreasonable. *See* 269 F.3d at 267. Here, in contrast, Newsome never complained to Battle, who was likewise the EEO Officer at the time Newsome suffered the alleged harassment, until she filed her formal complaint some two years after Coleman's al-

leged harassment began. Any fear of retaliation Newsome may claim to have felt in the interim is far less credible due to the fact that Newsome never attempted to reach the more subtle, informal solution sought first by Cardenas. As such, we find no triable factual dispute in the present case as to the second prong of the *Ellerth/Faragher* defense.

In short, the District Court correctly held that the AOC was entitled to the entry of summary judgment on Newsome's Title VII claim.

## C. *Remaining claims*

The District Court entered judgment for the AOC on the LAD claim on the ground of Eleventh Amendment immunity. Newsome raises no challenge to that judgment in her opening brief, and the AOC has not addressed that issue on the assumption that it is waived. In her reply brief, Newsome challenges the dismissal of the LAD claim insofar as it was entered with prejudice, claiming that she "would like not to be prohibited from filing this claim in another forum." Reply Br. at 3.

▮▮▮▮ The AOC is correct that Newsome waived any challenge to the entry of judgment on her LAD claim by failing to raise that issue in her opening brief. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief. . . ."). Furthermore, insofar as Newsome merely challenges the District Court's decision to exercise supplemental jurisdiction over the LAD claim after it had dismissed the Title VII claim, that argument is also waived. *See Kohler v. Inter–Tel Tech.*, 244 F.3d 1167, 1171 (9th Cir.2001); *Doe v. District of Columbia*, 93 F.3d 861, 871 (D.C.Cir. 1996) (same). Similarly, as to the individual LAD claims against Battle, Coleman,

and Hill, Newsome fails to make any argument in her opening brief on those claims, and thus those claims are waived.

■ Finally, as to the claim against Coleman for intentional infliction of emotional distress, Newsome again fails to argue the claim in her opening brief, and the issue must be deemed waived. In any event, after a review of the record, we find that the District Court properly rejected this state-law claim on the merits due to Newsome's failure to show that the emotional injury caused an objectively verifiable "permanent loss of a bodily function." Supp.App. at 3a–8a.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.