Filed 10/31/23  In re Alexander M. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ALEXANDER M. et al., Persons Coming Under the Juvenile Court Law. | B327153 (Los Angeles County Super. Ct. No. 22CCJP04861A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KEVIN M. et al., Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee.  Appeal by Yasmeen M. dismissed as moot; appeal by Kevin M. affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant Kevin M.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant Yasmeen M.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

---

The juvenile court at a disposition hearing on February 15, 2023 declared now-seven-year-old Alexander M. and three-year-old Lilith M. dependent children of the court and removed them from the custody of their parents, Yasmeen M. and Kevin M., after sustaining a petition pursuant to Welfare and Institutions Code section 300, subdivision (b)(1),[1] alleging that Yasmeen had failed to take medication prescribed for her mental health condition and during one incident, while unmedicated, threatened Alexander with a knife, and that Kevin, despite knowing of Yasmeen's mental and emotional problems, failed to protect the children from her.  Without challenging the juvenile court's jurisdiction findings or disposition orders adjudging the children dependents of the court, Yasmeen appeals the removal orders, arguing there were reasonable means to protect the children while they remained in her care.  Yasmeen's appeal has been mooted by the court's subsequent orders returning the children to her custody.

Kevin similarly does not question the jurisdiction findings or adjudication of dependency but contends there was insufficient evidence to support removal of the children from his custody.  We affirm those removal orders.

---

[1]     Statutory references are to this code unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Dependency Petition and Detention*

In December 2022 the Los Angeles County Department of Children and Family Services filed a section 300, subdivision (b)(1), petition alleging Yasmeen had mental and emotional problems, including manic episodes and a diagnosis of bipolar disorder, schizophrenia and depression; failed to take medication for her condition as prescribed; and on one occasion, while Alexander was on a bed, held a knife in her hands and made stabbing motions toward him.  The petition also alleged Kevin's knowledge of Yasmeen's problems and failure to protect the children from her.  The juvenile court issued a protective custody warrant on December 8, 2022 temporarily removing the children from their parents' physical custody and ordered them detained from their parents at the December 16, 2022 detention hearing.

### 2. *Evidence at the Jurisdiction/Disposition Hearing*

As shown by the Department's reports and attachments in evidence at the February 15, 2023 jurisdiction/disposition hearing, Kevin and Yasmeen were married and had two children: Alexander, who was autistic, and Lilith, who at the time of the hearing was two years old.  Both children had developmental issues.  Kevin and Yasmeen argued frequently and had what the maternal uncle described as a "toxic" relationship.

In March 2022 Kevin and Yasmeen were arguing at home while Yasmeen was holding Lilith.  When the argument escalated, Yasmeen punched Kevin, spat on him and threw a 10-pound wooden statue at him, striking his arm.  Police arrived at the scene in response to a call about the domestic violence

incident, and a police report was prepared. Kevin declined to press charges.

On October 1, 2022 police officers responded to an early morning domestic violence call by Yasmeen. When they arrived at Kevin and Yasmeen's home, Kevin instructed one of the officers to watch a video dated September 30, 2022 recorded on Kevin's cellphone. According to the officer, the video showed Yasmeen, with her left arm around Alexander's neck in a headlock, holding in her right hand a knife with a four-inch blade next to Alexander's head. Yasmeen, visibly distressed and crying, threw Alexander on the bed, where he landed face down. Yasmeen walked around the bed and again wrapped her arm around Alexander's neck. She raised her right hand while holding the knife and thrust the knife toward Alexander's head, but stopped before the knife made contact with Alexander's body. She then let Alexander go.

Yasmeen provided the police her perspective of the September 30, 2022 incident. Kevin had been berating her that day after she returned from a doctor's visit and called her a "dumb bitch." A heated argument had ensued; and Kevin shoved Yasmeen, who was pregnant with their third child, with both hands. He then approached her with a knife and pointed it at her. Yasmeen "shoulder 'checked'" him, causing him to drop the knife. She grabbed it and locked herself in Alexander's room. Kevin unlocked the door and punched her in the face to try to get the knife, but she continued to hold onto it. At that point she blacked out. When her "memory 'faded' back in," she found herself in her own room with her two children but did not know where Kevin was. Later, in the evening, Yasmeen and Kevin had engaged in another argument that escalated into a physical

4

altercation.  According to Yasmeen, Kevin had been the aggressor, grabbing her arm and pushing her onto a bed while she had been holding Lilith.

When speaking to the police on October 1, Yasmeen explained she suffered from bipolar disorder, schizophrenia and depression and experienced memory lapses as part of her mental illness.  Although Yasmeen's doctor had prescribed her medication that did not interfere with her pregnancy and that she wanted to take, Kevin refused to allow her to do so and flushed Yasmeen's medication down the toilet.  She had been off her medication for several months, including during the September 30, 2022 incident.  She had a manic episode that day, temporarily blacked out and did not recall what was depicted in the video.

In a subsequent interview several months later (January 2023), Yasmeen provided a very different version of the September 30, 2022 incident, which included no mention of Kevin shoving her, approaching her with a knife, punching her or any other physical interaction with Kevin during their arguments that day.  She recalled pushing Alexander onto the bed but could not remember what happened after that.  She stated she had swung a remote control back and forth in her hand and never had a knife.

One of the officers who responded to the October 1, 2022 call and talked to Yasmeen observed bruising on Yasmeen's lip and right eye, which Yasmeen had pointed out when she told the officer Kevin had punched her in the face the prior day.  A different officer who interviewed Yasmeen two days later saw a bruise on Yasmeen's arm that Yasmeen said came from an

assault by Kevin. Yasmeen at that time reported Kevin physically abused her.

Although he had shown officers the video of the September 30th incident, Kevin refused to provide a copy to law enforcement. He later denied that he had a video of the incident, that Yasmeen wielded a knife or that there had been any physical altercation at all between them. In addition, Kevin refused, at least initially, to cooperate with the Department's investigation. He refused to allow the children's social worker inside the home and to respond when the social worker requested information or attempted to contact him, requiring the social worker to obtain a court order to enter the home and see the children.

The Department had previously investigated Kevin for domestic violence involving the mother of another child of his. That woman had obtained a five-year restraining order against Kevin, who was ordered to complete a domestic violence program through the family law court in Orange County.

Explaining the need for Alexander's and Lilith's removal from parental custody, the social worker expressed concern for the children's safety due to the domestic violence in their home and Kevin's history of domestic violence with the mother of Alexander and Lilith's half-sibling; Yasmeen's mental health crisis on September 30 and her failure to take medication prescribed for her condition; and Kevin's recording of the incident rather than intervening and calling the police. The social worker was also concerned about Kevin's refusal to cooperate with investigations by the police and the Department.

At the jurisdiction/disposition hearing Kevin's counsel, with Kevin present, told the court Kevin acknowledged he should have intervened in the incident rather than record it, but continued to

dispute Yasmeen used a knife. Asked by the court whether he remembered that the video showed Yasmeen holding a knife with a four-inch blade, Kevin replied he did not recall. Apparently commenting on the relative credibility of Kevin and the officer who had viewed the video and had described what he saw, the court observed that the officer "has no axe to grind at all." Finding the allegations of the dependency petition supported by a preponderance of the evidence, the court sustained the dependency petition as to both Yasmeen and Kevin.

Proceeding immediately to disposition the court, after hearing the arguments of counsel, declared the children dependents of the court and removed Alexander and Lilith from their parents' custody, finding by clear and convincing evidence the children were at substantial risk of physical or emotional harm in their parents' care and there were no reasonable means to protect the children without removal.[2] Finding Kevin's "failure to protect is extreme," the court stated that finding was one of its reasons for removal.

## DISCUSSION

1. *Yasmeen's Challenge to Removal at Disposition Is Moot*

"A court is tasked with the duty to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the

---

[2]    The court also ordered for both parents family reunification services, monitored visitation, participation in counseling and a parenting program for special needs children. As to Yasmeen the court further added ongoing psychiatric care and medication management and required she take all prescribed psychotropic medication.

matter in issue in the case before it.  A case becomes moot when events render it impossible for a court, if it should decide the case in favor of plaintiff, to grant him any effective relief.  For relief to be effective, two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276 [cleaned up].)

Yasmeen contends the February 15, 2023 disposition orders removing the children from her custody should be reversed because reasonable means existed to protect them while remaining in her care.  On September 19, 2023, while this appeal was pending, the juvenile court at a six-month review hearing (§ 366.21, subd. (e)) ordered the children returned to Yasmeen's custody.[3]  Because the September 19, 2023 orders provide Yasmeen with the only relief she seeks in her appeal, we dismiss her appeal as moot.

---

[3]  We grant the Department's motion to take judicial notice of the September 19, 2023 orders.  (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)  Although the juvenile court ordered the children returned to Yasmeen's custody on condition she and the children reside in the home of the maternal grandparents or any other Department-approved home, the record on appeal indicates Yasmeen had already moved out of the family home and lived with the maternal grandmother.

The court on September 19, 2023 permitted Kevin to have unmonitored visitation with the children but did not return them to his custody.

2. *Substantial Evidence Supports the Disposition Orders Removing the Children from Kevin's Custody*

The paramount purpose of the dependency laws "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see *In re Cole L.* (2021) 70 Cal.App.5th 591, 601; *In re A.F.* (2016) 3 Cal.App.5th 283, 289.)

After a dependency petition has been sustained pursuant to section 300, the court may order a child removed from the physical custody of a parent based on its finding, by clear and convincing evidence, that the child would be at substantial risk of physical or emotional harm if the parent were to live with the child and there are no reasonable means by which the child can be protected without removal. (§ 361, subds. (c)(1) [parent with whom the child resided at the time the petition was initiated], (d) [parent with whom the child did not reside at the time the petition was initiated]; *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re D.B.* (2018) 26 Cal.App.5th 320, 328; accord, *In re T.V.*, at pp. 135-136; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

Because an order for removal under section 361, subdivisions (c) and (d), must be based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable

9

trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; see *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123 ["[i]n reviewing for substantial evidence to support a dispositional order removing a child, we 'keep[ ] in mind that the [juvenile] court was required to make its order based on the higher standard of clear and convincing evidence'"]; see generally *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court"'"].)

The "appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re D.B.*, *supra*, 26 Cal.App.5th at pp. 328-329.)

Kevin's contention there was insufficient evidence to support removal of Alexander and Lilith from his custody is fundamentally flawed. Kevin presents a summary of the record that omits many of the facts underlying the juvenile court's decision. He relies, for example, on Yasmeen's relatively benign description of the September 30, 2022 incident during her January 2023 interview in which she denied wielding a knife,

and he ignores Yasmeen's prior statements that recounted his physical violence toward her. The juvenile court was entitled to accept some of Yasmeen's statements and reject others. (See, e.g., *In re Daniel G.* (2004) 120 Cal.App.4th 824, 830 ["As part of its task, the trier of fact may believe and accept as true only part of a witness's testimony and disregard the rest. On appeal, we must accept that part of the testimony which supports the judgment"]; *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409 ["a reviewing court will not . . . pass upon the credibility of witnesses [citation], and the trier of fact is entitled to accept or reject all or any part of the testimony of any witness"].)

The record contains ample evidence from which the juvenile court reasonably determined under the heightened clear and convincing standard that the children would be at substantial risk of physical or emotional harm if Kevin were to live with them and there were no reasonable means by which the children could be protected without removal. Evidence supporting the court's decision included Kevin recording Yasmeen's September 30, 2022 mental health crisis, even while she thrust a knife toward Alexander, rather than intervene or seek help to protect the boy; subjecting the children to risk of harm by refusing to allow Yasmeen to take medication prescribed for her mental health condition and throwing it away; and essentially leaving his young, special-needs children without adult supervision during the time Yasmeen said she had blacked out. There was also substantial evidence Kevin exposed the children to domestic violence and was physically abusive to Yasmeen when the children were nearby, thus endangering them. (See, e.g., *In re R.C.* (2012) 210 Cal.App.4th 930, 941-942

11

["'[c]hildren can be "put in a position of physical danger from [spousal] violence"'"].)

Kevin contends the children were no longer at risk if they lived with him because there was evidence Yasmeen had moved out of the family home by the time of the disposition hearing. Kevin's extreme disregard for the children's safety and his violent actions, however, made it likely the children would remain at risk of harm in his care even if he and Yasmeen were no longer living together, particularly since Kevin denied the extent of the violence to which the children were exposed. (See *In re A.F.*, *supra*, 3 Cal.App.5th at p. 293 ["'[d]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"]; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 [same]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

Kevin also contends the removal orders should be reversed because he and Yasmeen had voluntarily enrolled and/or participated in parenting services and the Department identified family strengths, including that the children were bonded to their parents. Kevin's argument invites us to reweigh the evidence, a task outside the proper scope of appellate review. (See, e.g., *In re I.J.*, *supra*, 56 Cal.4th at p. 773 ["""[w]e do not reweigh the evidence"""]; see also *People v. Gomez* (2018) 6 Cal.5th 243, 309 ["'[i]n deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts"].)

## DISPOSITION

Yasmeen's appeal is dismissed as moot.  The juvenile court's February 15, 2023 disposition orders are affirmed.


PERLUSS, P. J.


We concur:


FEUER, J.


MARTINEZ, J.